# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

| | | |
|---|---|---|
| KATHLEEN BROWNING,<br>NICHOLAS FLINT COLLINS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 4:24-cv-00029-TWP-KMB |
| TRANS UNION LLC,<br>EXPERIAN INFORMATION SOLUTIONS INC,<br>EQUIFAX INFORMATION SERVICES LLC,<br>ENVOY MORTGAGE,<br>NATIONSTAR MORTAGE d/b/a MR. COOPER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART
## ENVOY MORTGAGE'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Envoy Mortgage LP ("Envoy") (Filing No. 41). Plaintiffs Kathleen Browning and Nicholas Flint Collins (together, "Plaintiffs") initiated this action under the Fair Credit Reporting Act, codified at 15 U.S.C. §§ 1681–1681x (the "FCRA"), and the Real Estate Settlement Practices Act, codified at 12 U.S.C. §§ 2601–17 (the "RESPA"), alleging violations of the FCRA and RESPA, breach of fiduciary duty, and negligence (Filing No. 1). Envoy requests that the Court dismiss all of Plaintiffs' claims brought against it in their entirety and with prejudice. For the reasons stated below, Envoy's Motion to Dismiss is **granted in part** and **denied in part**.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

On December 8, 2020, Plaintiffs purchased property located in Georgetown, Indiana (the "Property"), to use as their primary residence (Filing No. 1 at 5). To finance the home, Plaintiffs procured a "federally related mortgage loan," as that term is defined at 12 U.S.C. § 2602(1), secured by a mortgage against the property (the "Loan"). *Id.*

Envoy was the servicer of the Loan from its origination. Then, on October 1, 2021, the servicing of the Loan was transferred from Envoy to Defendant Nationstar Mortgage LLC ("Nationstar"). At this point, Envoy reported the Loan as 120 days past due. Plaintiffs were not notified by Envoy that the servicing of the Loan had been transferred until December 2021. *Id.* Plaintiffs paid Envoy for the Loan payments due for October 2021 and November 2021 on October 15, 2021, and November 8, 2021, respectively. *Id.* Then, when Plaintiffs paid Envoy for the Loan payment due for December 2021, Envoy returned the check and advised Plaintiffs to make payments to Nationstar, the new servicer for the Loan. In December 2021, Envoy also advised the Plaintiffs that the payments made for October 2021 and November 2021 would be credited to their account (Filing No. 1 at 6). However, the payments were not credited to Plaintiffs' account until nearly a year later—October 2022 and November 2022—resulting in Nationstar reporting the mortgage account as delinquent to one or more national credit reporting agencies ("CRAs") and assessing late fees each month. *Id.*

In November 2022, Plaintiff Kathleen Browning applied to the United Services Automobile Association for a real estate loan, only to be denied due to the adverse impact of the late payments reported on her credit report. Then, in February 2023, Plaintiffs sent a letter to Envoy requesting "information relating to the Loan, including payment letters, transfer notices, and an

explanation of how interest was calculated." ([Filing No. 1 at 7](#)). On April 12, 2023, Envoy admitted to Plaintiffs that it applied the two mortgage payments for October 2021 and November 2021 to the wrong account but was unwilling to issue refunds of interest or late fees. As of July 11, 2023, Envoy reported the mortgage account as 120 days past due. *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.    DISCUSSION

The Complaint alleges the following claims against Envoy: Count I: Breach of Fiduciary Duty; Count II: Negligence; Count III: Violations of the RESPA; Count IV: Willful Noncompliance with the FCRA; and Count VI: Negligent Noncompliance with the FCRA (Filing No. 1 at 9-14). Envoy moves to dismiss Plaintiffs' claims for breach of fiduciary duty, negligence, and violations of the RESPA and FCRA (Filing No. 43 at 6) on the grounds that Plaintiffs have failed to state a claim for each. Envoy further urges the Court to dismiss Plaintiffs' claims in their entirety for failure to allege compliance with the "Notice and Cure" provision of the Loan. *Id.* at 10. The Court will address the latter argument first and then each of Plaintiffs' claims in turn.

### A.    Whether Plaintiffs Fail to Allege Compliance with the Notice and Cure Provision

The Loan entered into by Plaintiffs and Envoy contains the following Notice and Cure provision:

> Neither [Plaintiffs] nor [Envoy] may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this [Loan] or that alleges that the other party has breached any provision of, or any duty owed by reason of, this [Loan], until [Plaintiffs] or [Envoy] has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Filing No. 43 at 10 (emphasis omitted)).[1] Envoy argues that Plaintiffs have failed to allege compliance with this provision, so dismissal of the entire Complaint is warranted. *Id.* In response, Plaintiffs first argue that they "requested information relating to the loan, including payment

---

[1] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (collecting cases). Plaintiffs refer to the Loan, which is clearly central to their claims.

letters, transfer notices, and an explanation of how interest was calculated" thus satisfying this provision (Filing No. 1 at 7). However, such requests are, at most, an inquiry into whether a breach occurred—not a notification of breach. Requests for information and an accounting showing a calculation of interest do not provide sufficient notice to Envoy to satisfy the requirements of the Notice and Cure provision. *See LaPointe v. U.S. Bank Nat'l Ass'n*, No. 19-cv-392, 2020 U.S. Dist. LEXIS 197636 (W.D. Mich. Oct. 23, 2020).

Second, Plaintiffs, without citing to any legal authority, assert that "lack of notice and opportunity to cure is an affirmative defense, which must be pleaded in an answer under Fed. R. Civ. P. 9(c), not grounds for dismissal under Rule 12(b)(6)." (Filing No. 55 at 6). Federal Rule of Civil Procedure 9(c) provides: "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c).

Here, the issue before the Court on the Motion to Dismiss is not whether Envoy has properly denied the occurrence of a condition precedent but rather, whether Plaintiffs have properly asserted satisfaction of the condition precedent. As discussed above, the Complaint does not "allege generally that all conditions precedent have occurred." *Id.* Instead, the Complaint asserts that Plaintiffs requested information about the Loan but is devoid of any assertion that Plaintiffs notified Envoy of a breach or issue after such request.

Third, in Plaintiffs' Response in Opposition to Envoy's Motion to Dismiss (the "Response") Plaintiffs assert that they "made multiple efforts to resolve these issues with Envoy before filing suit, addressing the concerns of notice." (Filing No. 55 at 6). Such assertion, if properly pled, may be enough to satisfy Federal Rules of Civil Procedure 9(c) and survive a motion to dismiss. Fed.

R. Civ. P. 9(c). However, "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Once again, the Complaint specifically states that Plaintiffs "requested information relating to the loan, including payment letters, transfer notices, and an explanation of how interest was calculated." (Filing No. 1 at 7). It does not, however, reference Plaintiffs' alleged "efforts to resolve these issues with Envoy." (Filing No. 55 at 6). Thus, the Complaint has not sufficiently pled compliance with the Notice and Cure provision.

The final question for analysis under this argument is whether Plaintiffs' failure to sufficiently plead compliance should lead to dismissal pursuant to the Notice and Cure provision. Envoy argues that case law supports dismissal of Plaintiffs' claims for failure to plead compliance with the Notice and Cure provision. In support of this argument, Envoy points the Court to *Milam v. Selene Finance, LP*, No. 24 C 317, 2024 U.S. Dist. LEXIS 126870 (N.D. Ill. July 18, 2024). In *Milam*, the plaintiff alleged she received letters intimidating her into making payments to avoid foreclosure in violation of the Fair Debt Collection Practices Act ("FDCPA"). *Id.* In enforcing a notice and cure provision identical to the one in this case, the court in *Milam* concluded that the provision covered "'any judicial action' that 'arises from' another's actions pursuant to the mortgage." *Id.* at *10. The court partially rested its conclusion on the grounds that "requiring Milam to comply with the notice and cure provision does not undermine the spirit of the FDCPA." *Id.* at *13.

Envoy also points the Court to *Rodriguez v. Rushmore Loan Management Services LLC*, No. 18-cv-1015, 2019 U.S. Dist. LEXIS 17202 (N.D. Ill. Feb. 4, 2019). The *Rodriguez* court dismissed the plaintiff's claims on grounds that she failed to allege compliance with the notice and cure provision, concluding that "actions that [d]efendant purportedly took pursuant to the

[m]ortgage" were subject to the notice and cure provision. *Id.* at *8. However, the court distinguished between claims that arose from the FDCPA, which might survive, and claims that arose from the mortgage, which should be dismissed. *Id.* at *9.

In their Response, Plaintiffs rely on *Abercrombie v. Wells Fargo Bank, N.A.*, arguing that "federal statutory claims are not subject to mortgage provisions that attempt to limit statutory liability[.]" (Filing No. 55 at 6 (citing 417 F. Supp. 2d 1006, 1008 (N.D. Ill. 2006))). Plaintiffs assert that *Abercrombie* does not extend to all federal statutory claims, but it does stand for the premise that Plaintiffs' failure to comply with the Notice and Cure provision does not warrant dismissal of their claims when doing so "would utterly defeat the central purpose of [the federal statute]" and "effectively permit[] [Envoy] to contract its way around [the federal statute's] requirements." *Id.*

Thus, whether Plaintiffs' failure to allege compliance with the Notice and Cure provision warrants dismissal of their claims turns on whether such claims arose pursuant to the Loan or from a federal statute and whether dismissal on these grounds would defeat the purpose of the statute.

### 1. Count I: Breach of Fiduciary Duty

Plaintiffs' breach of fiduciary duty claim clearly arises from the Loan. Specifically, Plaintiffs assert that Envoy had a "duty to administer the Loan account in a manner consistent with that of a reasonably prudent fiduciary under similar circumstances and to hold and apply their mortgage payments correctly." (Filing No. 1 at 9). Plaintiffs do not assert a violation of a federal statute in their breach of fiduciary duty claim. Thus, this claim clearly arises pursuant to the Loan. Envoy's Motion to Dismiss is therefore **granted** as to the breach of fiduciary duty claim.

### 2.  **Count II: Negligence**

Plaintiffs' negligence claim also arises from the Loan, as Plaintiffs allege the same general duties for their negligence claim as they do for their breach of fiduciary duty claim—the duty to apply the mortgage payments as a reasonably prudent person would. Such claims clearly arise from Envoy's contractual duties contained in the Loan. *Id.* Envoy's Motion to Dismiss is **granted** as to the negligence claim.

### 3.  **Count III: RESPA Claims**

Plaintiffs allege multiple violations of the RESPA by Envoy—specifically, violations of 12 U.S.C. §§ 2605(b), (d), (e), and (g) (Filing No. 1 at 12). These claims arise from the RESPA rather than from the Loan. Section 2605(b) requires notice by the transferor to the borrower of any transfer of the mortgage, Section 2605(d) deals with the required treatment of loan payments during a transfer period, Section 2605(e) discusses the duty of the servicer to respond to borrower inquiries, and Section 2605(g) deals with amounts paid into escrow accounts pursuant to a mortgage agreement. 12 U.S.C. §§ 2605(b), (d), (e), and (g). Further, the preamble of the RESPA states:

> It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result -- (1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b). The Court finds that 12 U.S.C. §§ 2605(b), (d), (e), and (g) comport with the RESPA's central purpose, and dismissing claims pursuant to a failure to allege compliance with the Notice and Cure provision would effectively allow Envoy to contract around the RESPA's provisions. So, the Notice and Cure provision does not warrant dismissal of these claims.

4.  **Count IV: Willful Noncompliance with the FCRA**

Plaintiffs allege willful violations of the FCRA, specifically, 15 U.S.C. § 1681s-2(b) (Filing No. 1 at 13). This section of the FCRA deals with the duties of furnishers of information upon notice of a dispute. *See* 15 U.S.C. § 1681s-2(b). Congress stated that the purpose of the FCRA is

> to require that [CRAs] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of [the FCRA].

15 U.S.C. § 1681. The duties of furnishers of information upon notice of a dispute clearly fall within the essential purpose of the FCRA. Therefore, dismissal of Count IV pursuant to the failure to allege compliance with the Notice and Cure provision is improper for the same reasons discussed above.

5.  **Count VI: Negligent Noncompliance with the FCRA**

In the alternative to their willful noncompliance claim, Plaintiffs allege negligent noncompliance of the FCRA by Envoy (Filing No. 1 at 14). These allegations are based on the same provision of the FCRA as Plaintiffs' willful noncompliance claim. The Court concludes above that dismissal pursuant to the Notice and Cure provision is improper for Plaintiffs' claim of willful noncompliance with the FCRA, and the analysis here is the same. Dismissal for the failure to allege compliance with the Notice and Cure provision is improper.

As stated above, because Plaintiffs fail to allege compliance with the Notice and Cure provision, dismissal is proper for Plaintiffs' breach of fiduciary duty claim and negligence claim. However, the failure to allege compliance with the Notice and Cure provision is not grounds for dismissal of Plaintiffs' claims under the RESPA and the FCRA. The Court will now address whether dismissal of any claims against Envoy is warranted for failure to state a claim.

**B.**    **Count I: Breach of Fiduciary Duty**

Even if Plaintiffs had properly alleged compliance with the Notice and Cure provision, they fail to state a claim for breach of fiduciary duty. First, both parties cite cases for the well-settled principal that in Indiana, "[m]ortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so." *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998); *see Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003); *see also Kreighbaum v. First Nat'l Bank*, 776 N.E.2d 413 (Ind. Ct. App. 2002). However, a confidential relationship exists

> whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. Not only must there be confidence by one party by the other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. Furthermore, it must be shown that the dominant party wrongfully abused the confidence by improperly influencing the weaker so as to obtain an unconscionable advantage.

*Kreighbaum,* 776 N.E.2d at 419 (quoting *DeBrota*, 703 N.E.2d at 167). Plaintiffs argue that such special circumstances occurred because they placed special trust and confidence in Envoy (Filing No. 55 at 3).

The Seventh Circuit has held that "a mortgagee owes a fiduciary duty to a mortgagor in some narrow aspects of the relationship, such as when the mortgagor retains control of borrowed money to pay expenses as an agent for the mortgagor, such as title insurance costs." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 n.10 (7th Cir. 2012). Here, Plaintiffs' allegations that Envoy improperly applied their payments to the wrong account arise solely out of the Loan. Further, Plaintiffs' allegations do not allege that Envoy was acting as their agent at any point in time.

Plaintiffs cite *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. March 18, 2002). In *Ploog*, the court held that a fiduciary duty may arise when the mortgagee fails to pay taxes from an escrow account using funds made available to it by the mortgagor. *Id.* at 875.

10

However, the present case involves neither an escrow account nor a fund of money intended to be supervised by Envoy. Plaintiffs do not allege there was ever any intent for Envoy to supervise the payments.

Lastly, Plaintiffs allege, without citing to any legal authority, that Envoy's misapplication of the two payments and retention of the funds for nearly a year created a constructive trust (Filing No. 55 at 4). According to Plaintiffs, the creation of such constructive trust gives rise to a fiduciary duty. *Id.* The Court is not persuaded.

"Constructive trusts are 'creatures of equity' that are 'imposed when legal title is gained through wrongful means.'" *Geels v. Flottemesch*, 243 N.E.3d 1069, 1070 (Ind. 2024) (quoting *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1109 (Ind. 2012)). "'Fraud constitutes an essential ingredient in a constructive trust[,]' and such fraud may be 'actual or constructive.'" *Id.* (quoting *Hall v. Ind. Dep't of State Revenue*, 351 N.E.2d 35, 38 (Ind. Ct. App. 1976) (alteration in original)). However, Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). Plaintiffs do not contend that actual fraud occurred. Only constructive fraud is left. "To satisfy this heightened pleading requirement in a constructive fraud claim under Indiana law, a plaintiff must allege: (1) the defendant had knowledge that was not in the plaintiff's possession and (2) the defendant improperly abused the plaintiff's confidence to obtain an unconscionable advantage." *MDG Int'l Inc. v. Australian Gold, Inc.*, No. 07-cv1096, 2008 U.S. Dist. LEXIS 65450 (S.D. Ind. Aug. 22, 2008) (citing *Comfax Corp v. N. Am. Van. Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992)). Such allegations must be set out in the complaint itself. *Id.* (citing *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003)).

Plaintiffs' argument fails on both elements. The Complaint neither alleges specific knowledge by Envoy not in Plaintiffs' possession, nor alleges an abuse of confidence. Further, the relationship does not lend itself to an inference that Plaintiffs bestowed any confidence in Envoy beyond performing basic contractual duties, such as applying payments to the proper account. In the absence of constructive fraud, no constructive trust was created. For the reasons discussed above, Plaintiffs have failed to state a claim for breach of fiduciary duty.

## C.    <u>Count II: Negligence</u>

Even if Plaintiffs had properly pled compliance with the Notice and Cure provision, they fail to state a claim for negligence upon which relief can be granted. "To establish a claim of negligence, a plaintiff must show: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach proximately caused the plaintiff's injury." *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 970 (Ind. 1999). Plaintiffs allege that Envoy owed them a duty to apply the payments as a reasonably prudent person would (<u>Filing No. 1 at 10</u>). In the Response, Plaintiffs cite *Catalan v. GMAC Mortgage Corp.*, arguing that "the Seventh Circuit has recognized that a negligence claim is appropriate where a duty arises independently of the contract." (<u>Filing No. 55 at 4</u>) (citing 629 F.3d 676, 693 (7th Cir. 2011)). However, "[u]nless there is evidence of an independent tort that would have existed if there was no contract between the parties, they 'should not be permitted to expand that breach of contract into a tort claim . . . by claiming negligence as the basis of the breach.'" *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638 (Ind. Ct. App. 2015) (quoting *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003)). Plaintiffs fail to cite, and the Court did not locate, any legal authority holding that Envoy's obligation to apply the mortgage payments to the correct account arises independently of the Loan. Rather, such an obligation appears to arise directly from, if not

entirely because of, the Loan. Plaintiffs essentially argue that Envoy negligently breached the Loan. Such a claim is not actionable. *Id.* Plaintiffs therefore fail to state a claim for negligence.

### D.    <u>Count III: RESPA Claims</u>

Plaintiffs allege violations of 12 U.S.C. §§ 2605(b), (d), (e), and (g), none of which is barred by Plaintiffs' failure to allege compliance with the Notice and Cure provision. *See supra* III(A). The Court finds that Plaintiffs properly allege claims under Sections 2605(b) and (d), and Envoy's Motion to Dismiss is **denied in part** as to those specific claims. However, Plaintiffs fail to allege circumstances that warrant a claim under Sections 2605(e) and (g), and Envoy's Motion to Dismiss is **granted in part** as to those specific claims.

#### 1.    <u>Plaintiffs' Claim Under 2605(b)</u>

Section 2605(b) of the RESPA requires "[e]ach servicer of any federally related mortgage loan [to] notify the borrower in writing of any assignment, sale or transfer of the servicing of the loan to any other person," with such notification being required "not less than 15 days before the effective date of transfer." 12 U.S.C. § 2605(b)(1), (2). Plaintiffs' Complaint alleges that Envoy "failed to notify the Plaintiffs of the assignment, sale, or transfer of the Loan within the time permitted by law." (Filing No. 1 at 11). Envoy argues that Plaintiffs' contentions are "not plausible given their acknowledgement that the service transfer was effective October 1, 2021," and their omission of "any documentation or facts specifying how Envoy eventually notified Plaintiffs in December 2021." (Filing No. 43 at 18).

In support of its argument, Envoy urges the Court to consider a letter allegedly sent to Plaintiffs on September 13, 2021 (the "Servicing Transfer Notice") (*Id.*; *See* Filing No. 43-1 at 25-28). "A plaintiff is under no obligation to attach to her complaint documents upon which her action is based." *Venture Assocs. Corp.*, 987 F.2d at 431. However, "a defendant may introduce certain

pertinent documents if the plaintiff failed to do so." *Id.* Such documents "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citing cases). While the Servicing Transfer Notice is clearly central to Plaintiffs' claims, Plaintiffs did not refer to it in their Complaint. Moreover, even if the Court were to consider the Servicing Transfer Notice, Plaintiffs allege that they were not notified of the transfer of the Loan within the time permitted by law, which the Court must take as true for the purposes of this Motion to Dismiss. *Bielanski*, 550 F.3d at 633. The Court, on a motion to dismiss, may not question the veracity of Plaintiffs' claims pursuant to a document provided by the defendant purporting to refute such claims. At this stage of the litigation, the Court may not conclude that Plaintiffs' claims are false and that they did in fact receive timely notice merely because a letter sent to Plaintiffs is dated within the statutory time frame. Such analysis is reserved for summary judgment. Because Plaintiffs allege that they were not notified of the transfer within the statutory timeframe, the Complaint is sufficient for this claim.

### 2.  Plaintiffs' Claim Under 2605(d)

The Complaint asserts that Envoy "imposed late fees on the Plaintiffs regarding payments received during the 60-day period beginning on the effective date of the servicing transfer" and treated such payments "as late for credit reporting and other purposes in violation of 12 U.S.C. § 2605(d)." (Filing No. 1 at 11). Envoy argues that because it was not the "servicer" and did not engage in the "servicing" of the Loan at the time of the alleged violations, Plaintiffs' claims fail, as 2605(d) imposes "servicing" obligations on the "servicer." (Filing No. 43 at 17). The Court disagrees.

The plain language of Section 2605(d) does not limit its applicability to only a "servicer" or an entity that is "servicing" the Loan. Section 2605(d) states:

**(d) Treatment of loan payments during transfer period.** During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

12 U.S.C. § 2605(d). The trigger for liability under Section 2605(d) is the transfer of the servicing of any federally related mortgage loan. The Court does not see language limiting this Section only to actions by the "servicer." Rather this Section states that "a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payments may be treated as late for *any other purposes*." *Id.* (emphasis added). Plaintiffs specifically allege that Envoy treated such payments as late, stating that "as of July 11, 2023, Envoy reported the mortgage account as 120 days past due." (Filing No. 1 at 7). Moreover, Plaintiffs' allegations mirror Section 2605(d) in a nearly identical fashion. Thus, Plaintiffs have properly alleged a claim under 12 U.S.C. § 2605(d).

### 3. Plaintiffs' Claim Under 2605(e)

The Complaint alleges that Envoy failed to acknowledge, respond, investigate, or correct errors pursuant to their qualified written requests in violation of Section 2605(e) (Filing No. 1 at 11-12). While Section 2605(d) does not limit its application to only a "servicer," Section 2605(e) does. *See* 12 U.S.C. § 2605(e). Section 2605(e) states in relevant part:

**(e) Duty of loan servicer to respond to borrower inquiries**

**(1)** Notice of receipt of inquiry

**(A)** In general. If *any servicer* of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period. . . .

**(2)** Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the *servicer* shall [take certain actions] . . . .

**(3)** Protection of credit rating. During the 60-day period beginning on the date of the *servicer's* receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a *servicer* may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1618a of Title 15).

12 U.S.C. § 2605(e) (bold emphases in original; italics emphases added). Further, "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *Id.* § (i)(2). The term "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § (i)(3).

Plaintiffs cite *Perron v. J.P. Morgan Chase Bank, N.A.*, arguing that "[c]ourts have consistently held that servicers must comply with these notice and response requirements, and failure to do so can give rise to RESPA claims." (Filing No. 55 at 5 (citing 845 F.3d 852, 857 (7th Cir. 2017))). While the Court does not disagree, such assertion is not at issue. Rather, the issue before the Court is whether a transferor servicer must still comply with these notice and response requirements over a year after the transfer of the servicing of the Loan. Said differently, the issue is at what time is the transferor servicer relieved of its obligations imposed on servicers under the RESPA. The Fourth Circuit has analyzed this precise question stating:

[t]he focal point of these obligations is the "effective date of transfer," or "the date on which the mortgage loan payment . . . is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan." 12 U.S.C. § 2605(i)(1); 12 C.F.R. § 1024.2(b) (same). Before this

date, RESPA contemplates that servicing obligations thus rest with the transferor servicer. But after this date, servicing obligations rest with the transferee servicer.

*Harrel v. Freedom Mortg. Corp.*, 976 F.3d 434, 441 (4th Cir. 2020) (omission in original). The Court finds the Fourth Circuit's reasoning persuasive. The duty to acknowledge, respond, investigate, and correct errors lies with the entity servicing the Loan at the time the qualified written request is made. This is especially true the farther from the transfer date the request is made. The transferor servicer may not even have the capability to investigate certain issues or correct errors after transfer because they are no longer in control of the servicing.

Here, Plaintiffs assert that Envoy failed to acknowledge, respond, investigate, or correct errors pursuant to their February 27, 2023, letter more than a year after the transfer date of October 1, 2021. By their own Complaint, Plaintiffs knew that Envoy had ceased servicing the Loan at least a year earlier. By this point, Envoy was relieved of its notice and response obligation under Section 2605(e). Therefore, Plaintiffs fail to state a claim under Section 2605(e).

The Court acknowledges that the transferor servicer is not immediately relieved of all liability under Section 2605(e) as soon as the transfer is made. There may be circumstances that still warrant liability for the transferor servicer under Section 2605(e) even after the transfer. But as alleged in the Complaint, when the qualified written request is made more than a year after the transfer date, and the requesting party knows the transferor servicer is no longer servicing the loan, the notice and response requirements of Section 2605(e) will not apply, so Plaintiffs fail to state a claim under this Section.

### 4. **Plaintiffs' Claim Under 2605(g)**

The Complaint alleges that Envoy "failed to properly apply Plaintiffs' Loan payments to the correct account in violation of 12 U.S.C. § 2605(g)." (Filing No. 1 at 11). However, Section 2605(g) is expressly limited to escrow accounts, which are not at issue here. Section 2605(g) states:

> **(g) Administration of escrow accounts.** If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g) (emphasis in original). Any liability resulting from Section 2605(g) is expressly premised on the condition that "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, . . ." *Id.* Plaintiffs do not allege that the Loan required payments into an escrow account. Section 2605(g) is therefore inapplicable, and Plaintiffs fail to state a claim under this Section.

**E.     Count IV: Willful Noncompliance with the FCRA**

The Complaint alleges willful noncompliance with the FCRA by Envoy. Specifically, Plaintiffs allege violations for failing to investigate the disputed information, failing to review all relevant information provided by the CRA, and failing to block the reporting of inaccurate information to CRAs in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A), (B), and (E) (Filing No. 1 at 13). Envoy argues that "Plaintiffs do not allege that Envoy was notified of their credit disputes by any consumer reporting agency, which is a threshold requirement to trigger furnisher liability under 15 U.S.C. § 1681s-2(b)." (Filing No. 43 at 20). However, as Plaintiffs argue, "[t]he FCRA does not require a CRA to tell a *consumer* when it notifies a *furnisher of information* about the consumer's dispute. As a result[,] a consumer may not, at the time of filing a complaint, be in a position to

allege that notification." *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007) (emphases in original).

The Seventh Circuit has clarified its unpublished opinion in *Lang* stating, "[a] plaintiff must allege that she notified a CRA and identify the CRA she notified." *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707 (7th Cir. 2024). Plaintiffs have complied with *Freeman*. *Id.* The Complaint states, "[o]n or about October 30, 2023, Plaintiffs, by counsel, sent a letter via U.S. certified mail to Defendants Trans Union, Equifax, and Experian, wherein each Plaintiff disputed the reporting of the Loan account. Specifically, Plaintiffs disputed the reporting of the late payments on the Loan account." ([Filing No. 1 at 8](#)). Envoy may still prevail on summary judgment if it can demonstrate that a CRA did not notify it of Plaintiffs' dispute. However, at this stage in the litigation, Plaintiffs' recovery under the FCRA is plausible and thus the Complaint is sufficient. *Lang*, 249 F. App'x at 466–67.

Envoy cites the Court's opinion in *Prosser v. Capital One Bank (USA), N.A.*, No. 20-cv-1117, 2021 U.S. Dist. LEXIS 243001 (S.D. Ind. December 21, 2021), arguing that *Prosser* dismissed a FCRA claim, finding that even an inference that a CRA forwarded the dispute to the furnisher does not suffice ([Filing No. 43 at 20](#)). However, the plaintiff in *Prosser* merely asserted that he notified the furnisher defendants directly via email rather than asserting that he notified a CRA. *Id.* at 13. Such circumstances are different than those of the case at bar. Plaintiffs in this case expressly allege that they notified multiple CRAs specifically disputing the reporting of the late payments and identified the CRAs as required by *Freeman*, 113 F.4th at 707. Such allegations are sufficient to survive Envoy's Motion to Dismiss.

Lastly, Envoy argues that Plaintiffs' "conclusory allegations that Envoy wrongfully reported the loan as 120 days late contemporaneously on the same date of the service transfer and

again almost two years after the service transfer of the loan 'as of July 11, 2023' are unsupported by facts that could make those allegations plausible." (Filing No. 43 at 22). Envoy surmises that "[i]t is the reporting of late payments by the new servicer from January 2022 to August 2022 that Plaintiffs dispute" rather than the reporting of the misapplied payments by Envoy. *Id.* at 21. The Court does not find this distinction material. Plaintiffs specifically allege that, "[a]s of July 11, 2023, Envoy reported the mortgage account as 120 days past due" and "[a]s of July 11, 2023, Nationstar reported the account as past due from January 2022 through August 2022." (Filing No. 1 at 8). Such allegations are clearly directed at the reporting of late payments by both Envoy and Nationstar. Therefore, the Complaint sufficiently alleges willful noncompliance with the FCRA.

**F.    Count VI: Negligent Noncompliance with the FCRA**

In the alternative, the Complaint alleges negligent noncompliance with the FCRA by Envoy (Filing No. 1 at 14). These allegations are based on the same failures in violation of 15 U.S.C. §§ 1681s-2(b)(1)(A), (B), and (C) as Plaintiffs allege in Count IV. Envoy's Motion to Dismiss treats Plaintiffs' allegations of willful and negligent noncompliance of the FCRA as one in the same for the purposes of dismissal (*See* Filing No. 43 at 20-22). Even if Envoy treated the claims as separate, their arguments would fail for the same reasons above. Therefore, the Complaint sufficiently alleges negligent noncompliance with the FCRA.

**G.    Leave to Amend**

Plaintiffs have requested leave to amend their Complaint (Filing No. 55 at 7). Envoy does not contest their request but does ask the Court to dismiss Plaintiffs' negligence claims and Section 2605(d), (e) and (g) claims with prejudice (Filing No. 43 at 16-17, Filing No. 57 at 7).  A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason – such as undue delay, bad faith . . . futility of amendment, etc. –

the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371, U.S. 178, 182 (1962). "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Moreover, "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation, Inc. v. Land O'lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Envoy does not provide an analysis as to why granting Plaintiffs leave to amend would be futile or otherwise unwarranted. Accordingly, Plaintiffs' request for leave to amend their original Complaint is **granted** and the dismissals shall be without prejudice.

## IV.    CONCLUSION

For the reasons explained above, Envoy's Motion to Dismiss Plaintiffs' Complaint (Filing No. 41) is **GRANTED in part and DENIED in part**. The Motion is **granted** as to Count I: Breach of Fiduciary Duty; Count II: Negligence; and specific claims under Count III: RESPA, which allege violations of 12 U.S.C. §§ 2605(e) and (g). Those claims are **dismissed without prejudice**. The Motion is **denied** as to Count IV: Willful Noncompliance with the FCRA; Count VI: Negligent Noncompliance with the FCRA; and specific claims under Count III: RESPA Claims, which allege violations of 12 U.S.C. §§ 2605(b) and (d). Those claims have survived the initial hurdle of a motion to dismiss.

Plaintiffs are **granted** leave to amend their Complaint, and they have 14 days from the date of this Order to file an Amended Complaint, if doing so would not be an exercise in futility. If no Amended Complaint is filed by the deadline, this case will proceed with the undismissed counts.

**SO ORDERED.**

Date:  2/18/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Virginia Bell Flynn
Troutman Pepper Hamilton Sanders LLP
virginia.flynn@troutman.com

Ian Fuqua, I
Quilling, Selander, Lownds, Winslett & Moser, P.C.
ifuqua@qslwm.com

Paulina Garga-Chmiel
Dykema Gossett PLLC
pgarga@dykema.com

Caleb J. Halberg
DYKEMA GOSSETT PLLC (Chicago)
chalberg@dykema.com

Adam T. Hill
SEYFARTH SHAW LLP (Chicago)
ahill@seyfarth.com

Andrew M. Lehmann
Trans Union, LLC
andrew.lehmann@transunion.com

Steve Lozier
Troutman Pepper Hamilton Sanders LLP
stephen.lozier@troutman.com

Christopher R. Murphy
Holland & Knight LLP
Chris.Murphy@hklaw.com

Camille Renee Nicodemus
Quilling Selander Lownds Winslett Moser
cnicodemus@qslwm.com

David Sandefer
Jones Day - Chicago
dsandefer@jonesday.com

Heather H Sharp
Seyfarth Shaw LLP
hsharp@seyfarth.com

Joshua Stiers
Trans Union, LLC
joshua.stiers@transunion.com

Zachary L. Taylor
Winton & Hiestand Law Group PLLC
zlt@louisvillelawoffice.com