## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

KATHLEEN BROWNING                    }
                                     }
-and-                                }
                                     }
NICHOLAS FLINT COLLINS               }
                                     }        **FIRST AMENDED COMPLAINT**
        Plaintiffs,                  }        (JURY TRIAL DEMANDED)
                                     }
            v.                       }
                                     }
TRANS UNION, LLC                     }
                                     }        **CASE NO: 4:24-cv-00029-TWP-KMB**
        Serve:                       }
        Corporation Service Company  }
        135 North Pennsylvania Street}
        Suite 1610                   }
        Indianapolis, IN 46204       }
                                     }
EXPERIAN INFORMATION                 }
SOLUTIONS, INC.                      }
                                     }
        Serve:                       }
        C T Corporation System       }
        334 North Senate Avenue      }
        Indianapolis, IN 46204       }
                                     }
EQUIFAX INFORMATION                  }
SERVICES, LLC                        }
                                     }
        Serve:                       }
        Corporation Service Company  }
        135 North Pennsylvania Street}
        Suite 1610                   }
        Indianapolis, IN 46204       }

1

ENVOY MORTGAGE LP                    }
                                     }
    <u>Serve:</u>                          }
    Cogency Global Inc.               }
    150 W. Market Street              }
    Suite 400                        }
    Indianapolis, IN 46204           }
                                     }
-and-                                }
                                     }
NATIONSTAR MORTGAGE LLC              }
dba Mr. Cooper                       }
                                     }
    <u>Serve:</u>                          }
    Corporation Service Company       }
    135 North Pennsylvania Street     }
    Suite 1610                       }
    Indianapolis, IN 46204           }
                                     }
    Defendants.                      }

---

## AMENDED COMPLAINT

Plaintiffs, Kathleen Browning and Nicholas Flint Collins, by and through counsel, for their First Amended Complaint against Defendants, Trans Union LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc., Envoy Mortgage LTD, and Nationstar Mortgage LLC dba Mr. Cooper, state as follows:

### INTRODUCTION

1.    This is an action for actual damages, statutory damages, and punitive damages brought by Plaintiffs against the Defendants for willful, knowing, and/or negligent violations of Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.* (known as the "***Fair Credit Reporting Act***", hereafter the "***FCRA***"), which relates to the compilation and dissemination of

consumer credit and other financial information. Plaintiffs also assert claims against Envoy Mortgage LTD for breach of fiduciary duty, negligence, breach of contract, conversion, fraud/fraudulent misrepresentation, unjust enrichment, and violation of Indiana Deceptive Consumer Sales Act, and against Envoy and Nationstar for violations of the federal Real Estate Settlement Practices Act, codified at 12 U.S.C. § 2605 *et seq*. ("***RESPA***").

## PARTIES

2.      Plaintiff Kathleen Browning ("***Plaintiff***" or "***Ms. Browning***") is a natural person residing in Indiana and is a "consumer" as defined by thee FCRA, 15 U.S.C. § 1681a(c).

3.      Plaintiff Flint Collins ("***Plaintiff***" or "***Mr. Collins***") is a natural person residing in Kentucky and is also a "consumer" as defined by the FCRA. Plaintiffs jointly obtained the mortgage loan at issue.

4.      Defendant, Trans Union, LLC ("***Defendant***" or "***Trans Union***"), is a for-profit, foreign limited liability company organized and existing under the laws of the State of Delaware and is engaged in the business of acquiring, using, furnishing, and disseminating consumer information in the Commonwealth of Kentucky. Trans Union has principal offices located in Chicago, Illinois. Trans Union is a "***consumer reporting agency,***" as said term is defined and/or contemplated in the FCRA, with respect to the matters referenced herein. Defendant Trans Union designated Corporation Service Company as its registered agent authorized to accept service of process.

5.      Defendant, Experian Information Solutions, Inc. ("***Defendant***" or "***Experian***"), is a for-profit, foreign corporation organized and existing under the laws of the State of Ohio and

is engaged in the business of acquiring, using, furnishing, and disseminating consumer information in the Commonwealth of Kentucky. Experian has principal offices located in Costa Mesa, California. Experian is a "***consumer reporting agency***", as said term is defined and/or contemplated in the FCRA, with respect to the matters referenced herein. Defendant Experian designated CT Corporation System as its registered agent authorized to accept service of process.

6.     Defendant, Equifax Information Solutions, LLC ("***Defendant***" or "***Equifax***"), is a for-profit, foreign limited liability company organized and existing under the laws of the State of Georgia and is engaged in the business of acquiring, using, furnishing, and disseminating consumer information in the Commonwealth of Kentucky. Equifax has principal offices located in Atlanta, Georgia. Equifax is a "***consumer reporting agency***", as said term is defined and/or contemplated in the FCRA, with respect to the matters referenced herein. Pursuant to KRS 14A.4-010(1)(a), Defendant Equifax designated Corporation Service Company as its registered agent authorized to accept service of process.

7.     Defendant Envoy Mortgage LTD ("***Defendant***" or "***Envoy***") is a corporation organized and/or existing under the laws of the State of Texas and is subject to the jurisdiction of this Court. Envoy maintains its principal office at 10496 Katy Freeway, Suite 250, Houston, Texas 77043.

8.     Defendant Nationstar Mortgage LLC ("***Defendant***" or "***Nationstar***") is a corporation organized and/or existing under the laws of the State of Delaware and is subject to the jurisdiction of this Court. Nationstar maintains its principal office at 8950 Cypress Waters Blvd, Dallas, Texas 75019.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs bring claims under federal statutes, specifically the FCRA, 15 U.S.C. § 1681 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*.

10.     Venue is proper in the Southern District of Indiana, New Albany Division, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. The property that is the subject of the mortgage loan is located in Indiana, and Plaintiff Browning resides in this District.

11.     Defendants transact business in this District and/or committed acts in this District that violate the FCRA and RESPA, and thus are subject to personal jurisdiction here.

## FACTS

12.     On December 8, 2020, Plaintiffs purchased a home in Georgetown, Indiana (the "Property"), which they use as their primary residence. To finance this purchase, Plaintiffs obtained a federally related mortgage loan as defined by 12 U.S.C. § 2602(1), secured by a mortgage on the Property (the "***Loan***").

13.     When the Plaintiffs purchased the home, they were engaged to be married. They dreamed their new home would serve to join and strengthen their families.

14.     On or about December 15, 2020, Envoy, through its loan originator Jeff McKendrick, sent an email to Plaintiffs congratulating them on their home purchase and advising them that it was an honor to work with the Plaintiffs.

15.     Envoy was the servicer of the Loan from the time of origination. Plaintiffs made their mortgage payments to Envoy as required. The Loan agreement required Plaintiffs to pay

principal, interest, and escrow amounts for taxes and insurance, and in turn required the servicer to properly credit payments and make timely tax/insurance disbursements from escrow.

16.     On or about October 1, 2021, the servicing of the Loan was transferred from Envoy to Defendant Nationstar.

17.     Envoy ceased servicing the Loan at that time, and Nationstar became the new servicer.

18.     However, Plaintiffs were not given timely notice of this transfer by either Envoy or Nationstar as required by RESPA.

19.     Envoy did not notify Plaintiffs of the servicing transfer until around December 2021, well after the transfer had already occurred.

20.     Plaintiffs continued to send their mortgage payments to Envoy. Plaintiffs paid Envoy the payment due for October 2021 and the payment due for November 2021. Envoy accepted these two payments.

21.     In early December 2021, Plaintiffs attempted to pay their December 2021 mortgage installment to Envoy as usual. Envoy rejected and returned the December payment, informing Plaintiffs for the first time that Nationstar was now the servicer and that future payments must be made to Nationstar. Only at this point did Plaintiffs learn of the transfer of servicing.

22.     Also in December 2021, an Envoy representative advised Plaintiffs that the two payments they had made for October and November 2021 would be credited to their loan account with Nationstar. Plaintiffs reasonably expected that Envoy would promptly forward or

account for those payments with Nationstar so that their loan remained current.

23. Envoy failed to promptly refund or properly transfer and apply the October and November 2021 payments to Plaintiffs' loan account after the servicing transfer.

24. Instead, Envoy erroneously applied the Plaintiffs' October 2021 and November 2021 mortgage installments to someone else's account.

25. Envoy only refunded the two payments roughly a year later (one in October 2022 and the other in November 2022). This extensive delay meant that, for almost all of 2022, Envoy's and Nationstar's records reflected that Plaintiffs had not made the October and November 2021 payments.

26. Over the course of most of 2022, Plaintiffs repeatedly implored Envoy and Nationstar in writing and through phone calls to apply the mortgage payments to their Loan account and correct the negative credit reporting.

27. Specifically, on or about December 29, 2021, Plaintiff Kathleen Browning notified Envoy in writing, by email, that Envoy had deposited the two mortgage payments but that the new servicer, Nationstar, had not received them. In the email, Ms. Browning advised that the payments should be applied to the mortgage.

28. Later that day, December 29, 2021, Envoy sent a response to Ms. Browning, acknowledging receipt of her email and promising to forward it to "specialists experienced in resolving [her] issue."

29. On or about December 30, 2021, Envoy sent an email to Ms. Browning requesting proof of payment.

30. On or about December 30, 2021, Ms. Browning furnished proof of payment to

Envoy.

31.    On or about June 27, 2022, Ms. Browning sent an email to Envoy along with proof of payment, pleading with it to send the two mortgage payments to Nationstar.

32.    On or about June 28, 2022, Envoy responded to the email, advising "I am so sorry you are having a hard time with this request." In the email, Envoy again requested proof of payment information, which had been sent to it at least twice by that point.

33.    On or about August 14, 2022, considering Envoy having failed to forward the mortgage payments to Nationstar, Ms. Browning demanded that Envoy refund the payments to her, totaling $2,842.54, and again provided proof that Envoy had received the funds.

34.    On or about September 15, 2022, Envoy wrote an email to Ms. Browning, advising that it would not investigate the matter further, claiming she had not provided proof of payment, although she had provided proof of payment multiple times.

35.    On about September 19, 2022, Ms. Browning sent an email to Envoy, demanding that it correct the misapplication of the mortgage payments.

36.    On or about August 15, 2022, Envoy sent a response email, advising that it had received Ms. Browning's request.

37.    On or about September 21, 2022, Envoy sent an email to Ms. Browning, advising her that her proof of payment had been forwarded to its team of specialists.

38.    In October 2022, Envoy located one of the misapplied loan payments and issued a check to the Plaintiffs for $1,421.27, the amount of one loan payment.

39.    In November 2022, Envoy located a second misapplied loan payment and issued a second check to the Plaintiff in the amount of $1,421.27, the amount of one loan payment.

40.    From December 2021 through August 2022, Plaintiffs timely paid Nationstar for each mortgage payment due.

41.    Each month from January 2022 through August 2022, Nationstar reported the mortgage account as delinquent to one or more national credit reporting agencies and assessed late fees for each month.

42.    In or around November 2022, Plaintiff Ms. Browning applied to USAA for a real estate loan. USAA denied the application because of the adverse impact of the late payments reported by Defendants on Ms. Browning's credit report.

43.    On or about November 8, 2022, Ms. Browning wrote a letter to Envoy advising that she was disputing Envoy's treatment of her October 2021 and November 2021 mortgage payments as late.

44.    On or about November 29, 2022, Envoy wrote a letter to Plaintiffs wherein it advised that it had "completed its investigation of the disputed information and determined that the previously reported information [was] accurate."

45.    On or about February 27, 2023, Plaintiffs, by counsel, wrote letters to Envoy and Nationstar wherein the Plaintiffs advised Envoy and Nationstar of the servicing errors and requested correction of the errors.

46.    The February 27, 2023 letters were "qualified written requests," a "requests for information," and "notices of error," as said terms are contemplated by RESPA and applicable regulations.

47.    Specifically, in the February 27, 2023 letter to Nationstar, the Plaintiffs disputed the erroneous reporting of the account to credit reporting agencies and the imposition of late

fees and interest charges associated with the servicing errors. The Plaintiffs requested a refund of the late fees and interest charges, correction of the credit reporting errors, and information about the account, including Automatic Universal Data Forms submitted to the credit reporting agencies.

48.    In the February 27, 2023 letter to Envoy, Plaintiffs requested information relating to the Loan, including payment letters, transfer notices, and an explanation of how interest was calculated.

49.    On or about March 14, 2023, Nationstar wrote a letter in response to the February 27, 2023 letter. In the March 14, 2023 letter, Nationstar acknowledged that Plaintiffs made the Loan payments in a timely manner and that Envoy failed to forward the missing payments, but nevertheless refused to correct how it was reporting the Loan to the credit reporting agencies.

50.    On or about April 12, 2023, Envoy wrote a letter in response to the February 27, 2023 letter. In the April 12, 2023 letter, Envoy admitted it misapplied the two mortgage payments (due for October 2021 and November 2021) to the wrong account.

51.    Even after Envoy's April 12, 2023 admission, the damage to Plaintiffs' credit and loan account persisted. As of July 11, 2023, Plaintiffs' mortgage account was still being reported as past due. In fact, as of that date, Envoy's reporting to at least one credit bureau showed the loan as 120 days past due, and Nationstar's reporting indicated that Plaintiffs had been past due on payments from January 2022 through August 2022.

52.    In other words, the erroneous late payment history remained on Plaintiffs' credit reports, and neither Envoy nor Nationstar had corrected the record to reflect that those

payments had actually been made on time (to Envoy) and should not have been counted as missed.

53.     Notwithstanding, Defendants Envoy and Nationstar each failed to take appropriate action to correct the errors, issue refunds of interest and late fees, treat the payments as timely, or otherwise provide all the requested information, such as the Automatic Universal Data Forms used to report information about the account to the credit reporting agencies.

54.     As of July 11, 2023, Envoy reported the mortgage account as 120 days past due and did not report the payments received for October 2021 or November 2021.

55.      As of July 11, 2023, Nationstar reported the account as past due each month from January 2022 through August 2022.

56.     On or about October 30, 2023, Plaintiffs, by counsel, sent a letter via U.S. certified mail to Defendants Trans Union, Equifax, and Experian, wherein each Plaintiff disputed the reporting of the Loan account. Specifically, the Plaintiffs disputed the reporting of late payments on the Loan account.

57.     On information, Trans Union, Equifax, and Experian notified Envoy and Nationstar of Plaintiffs' dispute.

58.     On or about November 15, 2023, Defendant Equifax sent a letter directly to Mr. Collins requesting identification documents, although it knew Mr. Collins was represented by counsel.

59.     On or about November 8, 2023, Defendant Trans Union sent a letter directly to Mr. Collins requesting additional identification documents, although it knew Mr. Collins was

represented by counsel.

60.     Despite their diligent efforts to correct errors on their credit reports, via letters, emails, phone calls, and even by hiring two law firms and a credit repair agency, the erroneous information regarding the late payments remained on Plaintiffs' credit reports.

61.     On or about November 27, 2023, Ms. Browning was denied a home loan based on the erroneous reporting of late payments on the Loan account.

62.     On or about June 21, 2024, Mr. Collins was denied a loan based on information reported by Trans Union.

63.     On or about November 30, 2023, Defendant Trans Union wrote a letter to Ms. Browning, wherein it verified the reporting of late payments each month from January 2022 through September 2022 was accurate.

64.     Defendant Experian did not respond to the Plaintiffs' letters.

65.     Defendant Equifax did not respond to Ms. Browning's letter.

66.     Plaintiffs have suffered significant harm as a result of Defendants' actions. Their credit reputations have been damaged by the false reports of serious delinquency. They have been denied credit and opportunities, such as the USAA loan, and have spent many hours in efforts to resolve these issues. Plaintiffs also incurred out-of-pocket expenses in correspondence with Defendants and suffered emotional distress, including anxiety, frustration, and loss of sleep, from the ongoing credit problems and lack of resolution.

67.     As a direct and proximate result of the conduct of Defendants, Plaintiffs each suffered actual damages, including but not limited to emotional distress and mental anguish, turmoil, stress, embarrassment, humiliation, inconvenience, loss of privacy, credit denials,

pecuniary loss, loss of credit opportunities and commercial viability, harm to reputation, postage, attorney's fees, and other expenses, and decrease to their credit scores, credit ratings, and perceived credit worthiness.

68.     Defendants' conduct and/or inaction as alleged herein was intentional, malicious, fraudulent, oppressive, and was carried out in reckless disregard for the rights of Plaintiff, warranting imposition of the maximum statutory penalties under the law and punitive damages.

69.     As herein alleged, Defendants each acted toward Plaintiffs with oppression, fraud, and/or malice, or in reckless or conscious disregard of the rights of Plaintiffs, warranting the imposition of punitive damages against the Defendants.

70.     The Loan agreement between Plaintiffs and Envoy contains a requirement for an aggrieved party to notify the other of a breach of the agreement and allow a reasonable opportunity to cure before instituting legal action arising from the breach.

71.     Plaintiffs have complied with all conditions precedent to bringing this action, including the notice and cure provision. As described, Plaintiffs provided Envoy with written notice of the issues and Envoy's breaches well before filing this lawsuit and gave Envoy a reasonable opportunity to cure. Plaintiffs waited a reasonable time for Envoy to correct the problems. Envoy did not do so.

72.     Plaintiffs generally allege that all such conditions precedent, including notice and cure, have been satisfied, excused, or waived.

## CLAIMS FOR RELIEF
## COUNT I – BREACH OF FIDUCIARY DUTY

73.    Plaintiffs hereby restate and incorporate all the factual and legal allegations asserted in paragraphs 1 through 72.

74.    The Loan agreement required the Plaintiffs to make escrow payments for taxes and insurance.

75.    Envoy owed fiduciary duties to Plaintiffs, including the duty to administer the Loan and escrow accounts in a manner consistent with that of a reasonably prudent fiduciary under similar circumstances and to hold and apply their mortgage payments correctly.

76.    Envoy accepted Plaintiffs' October 2021 and November 2021 Loan payments, but did not credit the Loan or escrow accounts.

77.    Rather, Envoy held the funds for nearly a year, for its benefit and to the detriment of Plaintiffs, despite repeated demands by Plaintiffs to forward the funds to Nationstar or refund the money.

78.    The Defendant Envoy breached its fiduciary duties in that it received and kept Plaintiffs' payments in trust and exercised dominion over the funds to its own benefit and to the detriment of Plaintiffs, in violation of its duties of care and loyalty to Plaintiffs.

79.    Envoy breached its fiduciary duties to Plaintiffs by failing to apply their payments to the Loan and escrow accounts, violating its duties of care and loyalty to Plaintiffs.

80.    Envoy's acts or omissions were the legal and proximate cause of the Plaintiffs' damages.

81.    As such, Defendant Envoy is liable to Plaintiffs for actual damages and attorney's fees and costs.

82.     The Plaintiffs are entitled to an award of punitive damages against Defendant Envoy.

## COUNT II – NEGLIGENCE

83.     The Plaintiffs herein restate and incorporate all the factual and legal allegations in paragraphs 1 to 72

84.     Envoy owed duties of care to Plaintiffs, including the duty to accept and apply payments from Plaintiffs as a reasonably prudent person under similar circumstances.

85.     Envoy negligently breached one or more of these duties. To wit, Envoy did not apply Plaintiffs' October 2021 and November 2021 Loan payments to the loan or escrow accounts, resulting in damages to the Plaintiffs.

86.     In the alternative, the Defendant Envoy was grossly negligent in the discharge of its duties to Plaintiffs, resulting in damages to Plaintiffs.

87.     As such, Defendant  Envoy is liable to Plaintiffs for actual damages and punitive damages.

## COUNT III – VIOLATION OF 12 U.S.C. § 2605

88.     The Plaintiffs herein restate and incorporate all the factual and legal allegations in paragraphs 1 to 72.

89.     The Loan required the Plaintiffs to make Loan payments to the servicer of the Loan.

90.     Defendants Envoy and Nationstar were required to accept payments from Plaintiffs and properly apply each of those payments to the correct account.

91.     Defendants Envoy and Nationstar failed to notify the Plaintiffs of the assignment,

sale, or transfer of the Loan within the time permitted by law, in violation of 12 U.S.C. §
2605(d).

92.     Defendant Nationstar imposed late fees on the Plaintiffs regarding payments
received during the 60-day period beginning on the effective date of the servicing transfer, in
violation of 12 U.S.C. § 2605(d).

93.     Defendants Envoy and Nationstar treated payments received during the 60-day
period beginning on the effective date of the servicing transfer as late for credit reporting and
other purposes, in violation of 12 U.S.C. § 2605(d).

94.     Defendant Nationstar failed to correct errors in the Loan account in response to
Plaintiffs' qualified written requests, in violation of 12 U.S.C. § 2605(e)(2).

95.     Defendant Nationstar failed to acknowledge receipt of Plaintiffs' qualified written
requests in a timely manner, in violation of 12 U.S.C. § 2605(e)(1)(A).

96.     Defendant Nationstar failed to correct errors in the Loan account in response to
Plaintiffs' qualified written requests, in violation of 12 U.S.C. § 2605(e)(2)(A).

97.     Defendant Nationstar failed to conduct an appropriate investigation or provide
Plaintiffs a written explanation or clarification of its reasons for not correcting the errors or the
name and telephone number of an employee who can assist the Plaintiffs, in violation of 12
U.S.C. § 2605(e)(2)(B).

98.     Defendant Nationstar reported late payments on the Loan account during the 60-
day period commencing from its receipt of Plaintiffs' qualified written requests, in violation of 12
U.S.C. § 2605(e)(3).

99.     Defendants Envoy and Nationstar engaged in a pattern or practice of

noncompliance with 12 U.S.C. § 2605, warranting the imposition of statutory damages.

100.    As a result of the Defendants' failures, as herein alleged, Plaintiffs each suffered actual damages, including property damages, real and personal, financial and pecuniary loss, emotional distress, mental turmoil, anguish, upset, turmoil, stress, anxiety, worry, inconvenience, loss of enjoyment of life, embarrassment, humiliation, attorney's fees, and loss of credit opportunities.

101.    Defendant Envoy is liable to Plaintiffs for its violations of 12 U.S.C. § 2605(d).

102.    Defendant Nationstar is liable to Plaintiffs for its violations of 12 U.S.C. § 2605(d) and (e).

103.    Under 12 U.S.C. § 2605(f), Defendants Envoy and Nationstar are each liable to each Plaintiff for actual damages due to the failure, statutory damages of up to $2,000, and reasonable attorney's fees and costs.

### COUNT IV: WILLFUL NONCOMPLIANCE WITH THE FCRA

104.    The Plaintiffs herein restate and incorporate all the factual and legal allegations in paragraphs 1 to 72.

105.    Defendants Nationstar and Envoy willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 1681 et seq., including but not limited to failing to comply with the duties of furnishers of credit information as set forth in 15 U.S.C. § 1681s-2(b), as described above.

106.    Defendants Nationstar and Envoy willfully failed to comply with the requirements of the FCRA, by, *inter alia*:

a.      failing to conduct an investigation with respect to the disputed information, in violation of 15 U.S.C. § 1681s-2(b)(1)(A);

b.      failing to review all relevant information provided by the consumer reporting agency concerning the Plaintiff, in violation of 15 U.S.C. § 1681s--2(b)(1)(B); and,

107.    failing to modify, delete, or permanently block the reporting of inaccurate, incomplete, or unverifiable information relating to Plaintiffs, to consumer report agencies, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

108.    As a result of these Defendants' willful violations of the FCRA, Plaintiffs have each suffered harm and the Defendants Nationstar and Envoy are liable to Plaintiffs for actual damages, statutory damages, punitive damages, plus attorney's fees and costs.

## COUNT V
## WILLFUL NONCOMPLIANCE WITH THE FCRA

109.    Plaintiffs restate and incorporate herein paragraphs 1 to 72.

110.    Defendants Trans Union and Experian willfully failed to comply with the requirements of the FCRA, by, *inter alia*:

a.      failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiffs in their consumer files, in violation of 15 U.S.C. § 1681e(a);

b.      failing to conduct a reasonable reinvestigation to determine whether the information disputed by the Plaintiffs is inaccurate and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receipt of Plaintiffs' disputes, in violation of 15 U.S.C. § 1681i(a)(1)(A);

      c.     failing to disclose all information in Plaintiffs' consumer file to Plaintiffs upon request, in violation of 15 U.S.C. § 1681g(a); and,

      d.     failing to notify Plaintiffs of the results of its reinvestigation within five (5) days after completion of its reinvestigation, in violation of 15 U.S.C. § 1681i(a)(6)(A).

111.    As a result of the Defendants' willful violations of the FCRA, Plaintiffs have each suffered harm and the Defendants Trans Union and Experian are liable to Plaintiffs for actual damages, statutory damages, punitive damages, plus attorney's fees and costs.

## COUNT VI
## NEGLIGENT NONCOMPLIANCE WITH THE FCRA

112.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 45.

113.    In the alternative, Defendants were each negligent in failing to comply with the requirements of the FCRA and are liable to Plaintiffs for actual damages, plus attorney's fees and costs.

## COUNT VII
## BREACH OF CONTRACT

114.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 72.

115.    A valid contract existed between Plaintiffs and Envoy, including but not limited to the mortgage loan agreement or related documents governing servicing obligations.

116.    Envoy owed the Plaintiffs the implied duty of good faith and fair dealing.

117.    Envoy acted in bad faith by unreasonably and knowingly misapplying Plaintiffs' payments, failing to correct its error for nearly a year, refusing to compensate Plaintiffs for the

resulting damages, and continuing to report Plaintiffs' account as delinquent after acknowledging the error.

118.    Envoy promised, implicitly or explicitly, to accept and apply Plaintiffs' payments in a timely and accurate manner. Envoy also was obligated under the contract and applicable law to notify Plaintiffs when servicing would be transferred.

119.    Envoy breached these contractual obligations by, among other things:

a.    Failing to timely credit Plaintiffs' October and November 2021 mortgage payments, despite receiving the funds;

b.    Failing to notify Plaintiffs of the transfer of servicing at least 15 days prior to the effective date;

c.    Causing or allowing improper late fees, charges, and/or negative credit reporting despite Plaintiffs' timely payments; and

d.    Failing to properly administer its loan servicing duties.

118.    As a direct and proximate result of Envoy's breach, Plaintiffs suffered damages including, but not limited to, additional interest, late fees, damage to their credit, denial of credit opportunities, and other economic and non-economic losses.

119.    Plaintiffs seek an award of compensatory damages, plus costs, attorneys' fees if permitted by contract or statute, and any other relief the Court deems just and proper.

## COUNT VIII
## CONVERSION

120.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 72.

121.    Plaintiffs owned and had the right to possess the funds they remitted for their

October 2021 and November 2021 mortgage payments.

122.    Envoy knowingly or intentionally exercised unauthorized control over these funds by accepting them, failing to apply them to Plaintiffs' loan, and retaining the benefit for nearly a year despite no lawful right to do so.

123.    This unauthorized control was contrary to Plaintiffs' rights and caused Plaintiffs harm, including wrongful charges, negative credit reporting, and denial of credit.

124.    Envoy's actions constitute criminal conversion under Ind. Code § 35-43-4-3.

125.    Under Ind. Code § 34-24-3-1, Plaintiffs are entitled to bring a civil action for conversion, seeking an award of up to three times the actual damages sustained, plus costs of the action and reasonable attorneys' fees.

126.    Plaintiffs demand judgment accordingly, for treble damages, fees, and all other proper relief.

## COUNT IX
## FRAUD/FRAUDULENT MISREPRESENTATION

127.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 72.

128.    Envoy made material misrepresentations and omissions to Plaintiffs, including but not limited to: (a) representing in December 2021 that Plaintiffs' October and November payments would be credited to the loan, although Envoy did not actually credit them or intend to credit them; and (b) failing to disclose that it had lost or misapplied the payments for nearly a year.

129.    Envoy knew or should have known these representations were false or misleading at the time they were made and intended that Plaintiffs rely on them.

21

130.    Plaintiffs did justifiably rely on Envoy's misrepresentations, believing their loan was current and that payments had been properly applied, when in fact Envoy's actions or omissions caused their account to be reported delinquent.

131.    As a direct and proximate result, Plaintiffs suffered damage to credit, credit denials, and additional financial harm.

132.    Envoy acted with the intent to deceive or at least with reckless disregard for the truth, justifying an award of punitive damages under Indiana law.

133.    Plaintiffs seek compensatory damages, punitive damages, costs, and all other appropriate relief.

### COUNT X
### UNJUST ENRICHMENT

134.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 72.

135.    Plaintiffs conferred a benefit on Envoy by sending two mortgage payments that Envoy collected, retained, and failed to properly forward or credit until many months later. Envoy was unjustly enriched by having and using the funds interest-free, while Plaintiffs' account remained delinquent.

136.    Envoy appreciated or knew of this benefit, as it admitted it had misapplied the payments but refused to reimburse Plaintiffs for charges incurred.

137.    Under principles of equity, Envoy should be required to disgorge or return any benefit received and compensate Plaintiffs for the resulting harm. It would be unjust for Envoy to retain any advantage from its handling of Plaintiffs' funds without fully remedying the damage.

138.    Plaintiffs request restitution of all amounts by which Envoy was unjustly enriched, plus pre- and post-judgment interest, costs, and any additional relief deemed just.

## COUNT XI
## VIOLATION OF INDIANA'S
## CONSUMER PROTECTION STATUTE

139.    The Plaintiffs herein restate and incorporate all factual and legal averments of paragraphs 1 to 72.

140.    Plaintiffs are "consumers," and Envoy is a "supplier" in a "consumer transaction" as those terms are used in the Indiana Deceptive Consumer Sales Act, Ind. § 24-5-.5-1 ("*IDCSA*").

141.    Envoy engaged in unfair, abusive, or deceptive acts or practices in connection with a consumer transaction, including but not limited to:

a.    misrepresenting the status of Plaintiffs' mortgage loan as seriously delinquent when Envoy had already received the relevant payments;

b.    Failing to disclose material facts regarding the servicing transfer, causing Plaintiffs to continue paying Envoy when it no longer properly serviced the loan; and

c.    Affirmatively assuring Plaintiffs that their October and November 2021 payments would be credited to the loan and escrow accounts.

142.    Plaintiffs gave Envoy reasonable opportunity to cure these deceptive acts, including written notice, yet Envoy failed to cure within 30 days, or otherwise acted with intent to mislead, constituting an incurable deceptive act.

143.    Envoy's deceptive acts caused Plaintiffs to incur actual damages, including wrongful late fees, denial of credit, additional interest, emotional distress, and other out-of-pocket expenses.

144.    Pursuant to Ind. Code § 24-5-0.5-4 and -8, Plaintiffs seek actual damages, costs, attorneys' fees, and such additional relief, including treble or punitive damages, as the Court deems appropriate, given Envoy's willful or incurable deceptive conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    Judgment against the Defendants for actual damages, including direct, compensatory, consequential, and incidental damages;

B.    Judgment against the Defendants for statutory damages;

C.    Judgment against the Defendants for punitive damages;

D.    An award of reasonable attorney's fees and costs;

E.    Trial by jury;

F.    Pre-judgment and post-judgment interest against the Defendants; and

G.    Any and all other relief to which the Plaintiff appears entitled.

Respectfully submitted,

WINTON & HIESTAND

*/s/ Zachary L. Taylor*
ZACHARY L. TAYLOR
905 Baxter Avenue
Louisville, Kentucky 40204
Phone | Fax: (502) 822-2500
Email: zlt@LouisvilleLawOffice.com
*Counsel for Plaintiffs*