UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KATHLEEN BROWNING, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:24-cv-00029-TWP-KMB |
| ) | |
| TRANS UNION LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANT EXPERIAN'S
## MOTION TO COMPEL ARBITRATION

Currently pending before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Compel Arbitration. [Dkt. 58.] Plaintiffs oppose Experian's motion. [Dkt. 63.] For the reasons set forth below, Experian's motion is **GRANTED** and this action is **STAYED with regard to Plaintiffs' claims as to Defendant Experian ONLY pending arbitration**. The case will continue to proceed under the applicable case management plan deadlines as to Plaintiffs' claims against all other Defendants.

### I.     RELEVANT BACKGROUND

Plaintiffs Kathleen Browning and Nicholas Collins filed this action under the Fair Credit Reporting Act ("FCRA"), alleging that Defendants reported inaccurate information about their creditworthiness. [Dkt. 1.] Defendant Experian has moved to compel this matter to arbitration due to the Plaintiffs' enrollment with an Experian website, CreditWorks, emphasizing that the website requires users to agree to arbitrate any claims as part of their registration. [Dkt. 59.]

To register for CreditWorks, a user must complete a web form. [Dkts. 59 at 11; 58-1 at 2, 4.] The form requires the user to enter personal information and create a user login. [Dkts. 58-3 at 2; 58-6 at 2.] Below the boxes to input registration information is bolded text notifying the user

that by clicking a button to continue, they "accept and agree to [Experian's] Terms of Use Agreement[.]" The phrase "Terms of Use Agreement" is in bold blue text, and if clicked, directs the user to the terms and conditions of the website. [Dkts. 58-3 at 2; 58-6 at 2.] To successfully register for CreditWorks, Plaintiffs clicked the button at the bottom of the screen. [Dkt. 58-1 at 2, 5.] The Terms of Use Agreement ("Agreement") contains an arbitration provision. [Dkts. 58-4; 58-7.] The arbitration provision contains a delegation clause, which provides that "the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision Agreement is void or voidable." [Dkts. 58-4 at 4–5; 58-7 at 8.]

Plaintiffs filed this action in February 2024, asserting claims against numerous Defendants. [Dkt. 1.] Experian filed a Motion to Compel Arbitration, [dkt. 58], which Plaintiffs oppose, [dkt. 63]. Plaintiffs filed an Amended Complaint in March 2025, [dkt. 86], and Plaintiffs and Experian subsequently filed a joint statement confirming that Plaintiffs' Amended Complaint does not have any bearing on the Parties' arguments in the pending Motion to Compel Arbitration. [Dkt. 96.] Thus, the pending motion is now ripe for the Court's review.

## II.   DISCUSSION

Experian argues that this Court should compel arbitration because there is a valid, enforceable agreement to arbitrate that covers Plaintiffs' claims based on their enrollment in the CreditWorks program. [Dkt. 59 at 10–13.] Plaintiffs do not dispute that they enrolled in CreditWorks. [Dkt. 63 at 2.] Instead, Plaintiffs make three primary arguments. First, they argue that an agreement to arbitrate was never formed because there was no mutual assent. [Dkt. 63 at 4.] Second, they argue that the Agreement is void due to unconscionability. [Dkt. 63 at 4–5.]

Third, they argue that even if the Agreement is valid, Experian impliedly waived its right to arbitrate because of its activities in the litigation process. [Dkt. 63 at 5–7.] The Court will address each of these arguments in turn.

### A.  Plaintiffs Formed a Binding Agreement to Arbitrate with Experian

Plaintiffs argue that an agreement to arbitrate was never formed because there was no mutual assent. [Dkt. 63 at 4.] Experian disagrees, arguing that it formed a binding agreement to arbitrate with Plaintiffs because the CreditWorks registration provided sufficient notice of the applicable terms and conditions, including arbitration, and Plaintiffs manifested their assent to those terms by clicking a button to continue. [Dkt. 59 at 10-13.] Conversely, Plaintiffs argue that Experian failed to provide clear and conspicuous notice of the terms of the Agreement and that the terms were not accepted since Plaintiffs took no affirmative action to manifest acceptance. [Dkt. 63 at 4.]

The Federal Arbitration Act ("FAA") codifies a strong federal policy in favor of enforcing arbitration agreements. *See* 9 U.S.C. § 2. The party opposing arbitration bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Under § 2 of the FAA, an agreement to arbitrate must be enforced if three conditions are satisfied: (1) the parties entered a written agreement to arbitrate, (2) the dispute is within the scope of the arbitration agreement, and (3) there is a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The Court must accept the non-movant's evidence as true and draw all reasonable inferences in favor of the non-movant. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002).

Here, Plaintiffs do not dispute any of the underlying facts regarding their enrollment in Experian's services or dispute the language of the Agreement; rather, they argue that the enrollment process was insufficient to form a binding agreement to arbitrate.[1]  [Dkt. 63 at 4.]  Plaintiffs also do not dispute the scope of the Agreement or that they have refused to arbitrate; thus, the sole question before the Court is whether the Parties at issue entered into a binding agreement to arbitrate.

Ordinary contract principles govern the enforceability of an agreement to arbitrate.  State contract law applies to determine whether the parties agreed to arbitrate.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The Court looks to the contract law of the state that was the "situs of all relevant events."  *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997).  Plaintiffs and Experian agree that Indiana law is the applicable state law in these circumstances.  [*See* dkt. 59 at 16 (Experian's brief citing Indiana law); dkt. 63 at 3 (Plaintiffs' brief citing Indiana law).]

A party seeking to compel arbitration must demonstrate the elements establishing that the parties agreed to arbitrate, *Teachers Credit Union v. Cripe*, 248 N.E.3d 1230 (Ind. Ct. App. 2024), including mutual assent, *DiMizio v. Romo*, 756 N.E.2d 1018, 1022 (Ind. Ct. App. 2001).  To establish mutual assent, the moving party must demonstrate that there was a meeting of the minds on all essential terms and elements of an agreement.  *Indiana Dept. of Correction v. Swanson Services Corp.*, 820 N.E.2d 733, 738 (Ind. Ct. App. 2005).  "The primary focus when deciding

---

[1] Insofar as Plaintiffs note in their "Factual Background" section that Experian itself was not a signatory or party to the Agreement, [dkt. 63 at 2–3], any argument on this point is waived because Plaintiffs did not develop it and the Court will not develop it on their behalf.  *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).  Moreover, as Experian points out, the Agreement expressly states that it covers the affiliates of the named party, and courts addressing this exact issue have routinely found Experian to be a covered affiliate in the Agreement.  [Dkt. 50 at 9-10 (citing cases).]

4

whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested assent to the agreement." *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009). Whether there was reasonable notice and manifested assent is determined through an objective inquiry. *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005).

The validity of a contract is not dependent on the signature of the parties; rather, "[a]ssent to the terms of a contract may be expressed by acts which manifest acceptance." *Int'l Creative Mgmt., Inc. v. D & R Ent. Co.*, 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996). A party may manifest assent by clicking a button to accept the terms and conditions on a digital platform. *See Jallali*, 908 N.E.2d 1168. Where a party manifests acceptance of a contract, the party is "generally bound to an arbitration agreement even if they did not read it." *Valesh v. Bajco Int'l, LLC*, 2021 WL 4876202, at *3 (N.D. Ind. 2021); *see also DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp.2d 896, 903 (N.D. Ind. 2001).

If a webpage utilizes a button signaling acceptance of the terms set forth, the inquiry hinges on two issues: (1) was there adequate notice of the terms and opportunity to review the terms, and (2) was it clear that the user was manifesting assent by clicking the button. *See Sgouros v. Transunion Corp.* 817 F.3d 1029 (7th Cir. 2016) (holding that mutual assent was not established where terms were not readily apparent and where no language suggested that pressing the button manifested assent). Notice is sufficient where the signer is provided with a "direct link to the text of the relevant terms." *Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 2025 WL 1088190, at *5 (7th Cir. 2025); *Merchants Bank of Indiana v. Curby*, 2022 WL 16658130, at *2 (S.D. Ind. 2022) (applying Indiana law). *Sgouros* suggests that a readily visible "Terms of Service" link provides sufficient notice. 817 F.3d at 102. In that case, the Seventh Circuit Court of Appeals

5

found that a hyperlink labelled "Printable Version" was insufficient to give notice, as opposed to language clearer language like "Terms of Use" or "Service Agreement." *Id.* at 1035.

If a website clearly instructs the user that by pressing a button the user assents to the terms, the user's button click is sufficient to establish mutual assent. *See Sgouros*, 817 F.3d at 1036 (indicating that notice of the importance of pressing a button is sufficient to establish assent where the website language includes a "clear prompt directing the user to read [the terms]"); *Jallali*, 908 N.E.2d at 1173 (notice sufficient where button following an agreement indicated "Accept"). But where the import of pressing a button is obscured, notice is insufficient to establish mutual assent. For example, in *Rojas v. GoSmith, Inc.*, notice was insufficient where the button indicated "See Job Matches" and no text informed the user that by pressing it, the party agreed to a contract. 2020 WL 831585 (N.D. Ind. 2020).

In this case, the Court concludes that Plaintiffs had adequate notice and opportunity to review the terms of the Agreement. Here, as in the Seventh Circuit Court of Appeals' recent decision in *Garage Door Systems LLC*, Plaintiffs were sufficiently informed of the terms via a direct link to the Agreement. Labelling the hyperlink to the terms and conditions as "Terms of Use Agreement" provided the Plaintiffs in this case with the notice needed to access and review the Agreement, including the arbitration provision. The link at issue was placed in large blue text directly below where Plaintiffs entered their registration information. For these reasons, the Court concludes that the central location and easy accessibility of the terms, as in *Jallali*, confirms that Plaintiffs had ample notice and opportunity to review the terms.

The Court also concludes that Experian provided explicit notice that by clicking the button labelled "Create Your Account" for Plaintiff Collins and labelled "Submit Secure Order" for Plaintiff Browning, Plaintiffs "accept and agree to [Experian's] Terms of Use Agreement[.]" [Dkts.

6

59 at 11; 58-3 at 2.] These clear prompts and Plaintiffs' access to the terms of use satisfies the applicable notice requirements. The language is clear and concrete, and the Court concludes that Plaintiffs affirmatively manifested their assent to be bound by the terms of the Agreement by clicking the buttons at issue. The direct statement prompting Plaintiffs to read the terms gave Plaintiffs clear notice of the import of pressing the button, and the clickable link provided them with ample opportunity to review the terms of the Agreement. For these reasons, the Court concludes that Experian has demonstrated the elements establishing that the Parties at issue agreed to arbitrate via mutual assent. This conclusion is supported by previous Indiana cases that have reached the same conclusion with the language at issue. *See Baker v. Experian Info. Sols., Inc.*, 2024 WL 3082644 (S.D. Ind. 2024); *Buelna v. Experian Info. Sols., Inc.*, 2024 WL 3873694 (N.D. Ind. 2024).

    **B.**    **The Agreement Between Experian and Plaintiffs Demonstrates a Clear and Unmistakable Intent to Leave Issues of Voidness to an Arbitrator**

Plaintiffs argue that the Agreement is void due to unconscionability. [Dkt. 63 at 4–5.] Experian disagrees, emphasizing that any issues of voidness are left to the arbitrator to decide. [Dkt. 59.]

Questions of arbitrability, "which include certain gateway matters" like the validity of the arbitration agreement, "are presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (citation omitted). But parties can agree to arbitrate these "gateway questions of arbitrability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (citation omitted). Where the parties evince a "clear and unmistakable" intent to delegate threshold questions of arbitrability to an arbitrator, a court may not decide the arbitrability issue. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *see also Int'l Med. Group, Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 842 (7th Cir. 2002) ("Unless the parties clearly and

7

unmistakably provide otherwise, the question of arbitrability is to be decided by a court, not by an arbitrator.").

Parties may demonstrate a clear and unmistakable intent to leave questions of arbitrability to an arbitrator where such terms are included in a delegation provision of the arbitration agreement. For example, in *Rent-A-Center*, the Supreme Court of the United States concluded that a section indicating that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable" demonstrated an agreement to leave issues of unconscionability to the determination of an arbitrator. 561 U.S. at 68 (alterations in original). Similarly, this District has repeatedly held that delegation provisions that indicate that issues of voidness are to be submitted to arbitration manifest the requisite intent to leave such questions for determination by an arbitrator. *See, e.g.*, *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824 (S.D. Ind. 2024) (finding requisite intent where clause indicated "all disputes and claims . . . , including all claims regarding [its] validity, scope, or enforceability" to "confidential binding individual arbitration." (alterations in original)); *Gunn v. Uber Techs., Inc.*, 2017 WL 386816 (S.D. Ind. 2017) (concluding that a clause that delegated all "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity" to an arbitrator was clear and unmistakable evidence that the signer agreed to submit issue to arbitration).

Where issues of arbitrability are delegated to an arbitrator, a party may only challenge these issues before a court if the arguments go directly to the delegation clause. A party must "specifically" challenge the validity of the delegation clause. *Rent-A-Center*, 561 U.S. at 70-71; *Farris v. W. and S. Life Ins. Co.*, 2014 WL 5465947, at * 4 (S.D. Ind. 2014). Even where the

8

alleged invalidity of the agreement affects the delegation clause, the court may not consider this challenge unless the arguments directly address "the validity of the delegation provision." *Rent-A-Center*, 561 U.S. at 73. Thus, where issues of unconscionability are delegated to an arbitrator, the court may consider arguments where a party asserts that the delegation clause is unconscionable, but not where the party argues that the agreement in general is unconscionable. *Id.* at 70 ("[W]e need not consider that claim because none of [the party's] substantive unconscionability challenges [were] specific to the delegation provision.").

In this case, the Court concludes that the delegation provision of the Agreement between Experian and Plaintiffs evinces a clear and unmistakable intent to leave threshold questions of arbitrability to the arbitrator. The delegation provision provides as follows: "[T]he arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement, including, but not limited to any claim that all or any part of this arbitration provision Agreement is void or voidable."[2] [Dkt. 58-4 at 4–5.] This language is nearly identical to the provision that the United States Supreme Court analyzed in *Rent-A-Center*, where it concluded that such language demonstrates a clear and unmistakable intent to leave issues of unconscionability to the arbitrator.

Plaintiffs in this case do not specifically challenge the delegation clause; thus, the issues raised are reserved for the arbitrator. Plaintiffs argue that the Agreement itself is procedurally unconscionable because it is an adhesion contract, which they argue is substantively

---

[2] In its reply brief, Experian cites contractual language that includes this provision but adds a clause explicitly discussing unconscionability. [Dkt. 64 at 4.] That additional language was not in the original agreements between the Parties, [dkts. 58-4 at 4–5; 58-7 at 8], but was added in a later amendment, [dkt. 58-5 at 11]. Because the language found in the original agreement is sufficient to establish the Parties' intent to delegate issues of voidness to the arbitrator, the Court need not address the additional provision further.

9

unconscionable due to the expansive reach of the Agreement. But these arguments go to the Agreement's validity in general, not to the delegation clause specifically. In fact, Plaintiffs never mention the delegation clause in their brief opposing Experian's motion. Since the Agreement between the Parties at issue evinces a clear and unmistakable delegation of issues to arbitration, and because Plaintiffs did not specifically challenge the delegation provision, the Court concludes that Plaintiffs' threshold questions of arbitrability must be left to the arbitrator.

### C.     Experian Did Not Impliedly Waive Its Right to Compel Arbitration Through Its Litigation Conduct

Plaintiffs argue that Experian impliedly waived its right to arbitrate by engaging in the litigation process in this case. Specifically, Plaintiffs emphasize that Experian did not file the pending motion for multiple months and point out that Experian engaged in the litigation by "filing witness and exhibit lists, exchanging initial disclosures, submitting a case management plan, and participating in discovery." [Dkt. 63 at 5–6.] Experian responds that questions of waiver have been delegated to an arbitrator through the delegation clause. [Dkt. 64 at 7–8.] Alternatively, Experian argues that the filing of the Motion to Compel Arbitration was not delayed such that Experian waived the right to arbitrate and contends that its limited participation in the litigation does not demonstrate waiver. [*Id.* at 8–9.]

Even if an arbitration agreement contains a delegation clause, "courts, not arbitrators, determine whether a party [has impliedly] waived its right to compel arbitration." *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 424 (7th Cir. 2025). Due to the fact-bound nature of the waiver inquiry, courts are particularly well-suited to examine the parties' litigation conduct to make this determination. *Id.* at 426. Thus, the Court will consider the merits of the Parties' waiver arguments.

A party may impliedly waive a contractual right to arbitrate through its actions in litigation. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Unlike other aspects of the analysis of an arbitration agreement, the federal policy favoring arbitration does not apply to issues of waiver—*i.e.*, there is no "thumb on the scales" favoring arbitration. *Id*. To determine whether a party has impliedly waived the right to arbitrate, a court must consider whether "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020). While this inquiry requires review of the totality of the circumstances, a party's "diligence or the lack thereof" in seeking to compel arbitration "should weigh heavily in the decision." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). A court considers a variety of additional factors, including whether the party initiated litigation or removed the action to federal court, whether the party has taken discovery, and the extent to which a party has participated in the litigation and the manner of their participation. *Cabinetree*, 50 F.3d at 390-91; *Kawasaki*, 660 F.3d at 994. To establish waiver, the court does not need to conclude that staying proceedings pending arbitration will prejudice the party opposing the motion to compel arbitration. *Cabinetree*, 50 F.3d at 390.

Filing a delayed motion to compel arbitration after traveling "too far down the judicial road before reversing course" establishes waiver. *Brickstructures*, 952 F.3d at 892. Thus, a party may waive its right to arbitrate if it substantially delays its motion to compel arbitration. *Compare Al-Nahhas*, 129 F.4th at 427 (waiver where party waited fourteen months to file motion to compel), *with Bradley*, 2017 WL 8780318 (S.D. Ind. 2017) (no waiver with four-month delay in filing motion to compel). Beyond considering when the party moves to compel arbitration, a court considers whether the party has previously manifested an intent to arbitrate. *See St. Mary's Med.*

11

*Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587, 589 (7th Cir. 1992). If a party is silent as to its intent to arbitrate, this supports waiver. *Id.* at 589 (noting a party's two years of litigation without ever mentioning arbitration). However, where the party signals intent to arbitrate, that preserves the right. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720 (7th Cir. 2004) (concluding that there was no waiver where a party waited eighteen months before filing a motion to compel arbitration because the opposing party was on notice of intent to arbitrate).

In this case, the Court concludes that the totality of the circumstances demonstrates that Experian has not waived its right to compel arbitration. Experian filed its Answer one month after appearing in this litigation, and it expressly raised an arbitrability affirmative defense in that pleading. [Dkt. 24 at 19.] Experian then filed its Motion to Compel Arbitration six months later. [Dkt. 58.] At that time, the case was still in its early stages. As with the limited delay in *Bradley*, Experian's delay was not so substantial as to establish waiver.

Experian has not engaged in a wait-and-see approach in this litigation. Rather, Experian has filed no other substantive motions other than the pending Motion to Compel. The Court concludes that Experian's limited participation in the proposed case management plan and initial discovery in this case has not waived its right to arbitrate its dispute with Plaintiffs, especially because this case involves four other Defendants who have been substantively engaged in the litigation. Experian has repeatedly emphasized at status conferences with the Court that it is attending to stay informed of the litigation but not waiving its right to arbitrate its dispute with the Plaintiffs. [*See, e.g.*, dkt. 120 at 1 n.1 (Court's scheduling order setting Settlement Conference for July 2025, specifically noting that Experian need not participate given its pending motion, which the undersigned included due to Experian's repeated emphasis of that point during various status conferences).]

Plaintiffs emphasize that Experian has received over 1,200 pages of discovery from Plaintiffs, which Experian does not dispute. Again, however, this case involves four other Defendants who are actively engaged in litigation with the Plaintiffs in this case; thus, it is unsurprising that Experian would be the recipient of the discovery that Plaintiffs have produced in this active case. Although the Seventh Circuit Court of Appeals has found waiver in cases in which parties have exchanged substantial amounts of discovery, *see Cabinetree*, 50 F.3d at 389 (receiving nearly 2000 documents) and *Al-Nahas*, 129 F.4th at 427 (exchanging thousands of documents), those cases are distinguishable from this case given Experian's limited participation and the active participation of the other four Defendants. For all of these reasons, the Court concludes that Experian has not waived its right to arbitrate its dispute with Plaintiffs.

### III. CONCLUSION

For the reasons stated herein, Experian's Motion to Compel Arbitration is **GRANTED**, [dkt. 58], and this action is **STAYED as to Defendant Experian ONLY** pending arbitration. The case will continue to proceed under the applicable case management plan deadlines as to Plaintiffs' claims against all other Defendants.

**SO ORDERED.**

Date: 5/27/2025

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email