UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KATHLEEN BROWNING, ) | |
| NICHOLAS FLINT COLLINS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:24-cv-00029-TWP-KMB |
| ) | |
| NATIONSTAR MORTAGE d/b/a MR. COOPER, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant Nationstar Mortgage LLC's ("Nationstar") Motion to Dismiss the Amended Complaint (Filing No. 90). Plaintiffs Kathleen Browning and Nicholas Flint Collins (together, "Plaintiffs") initiated this action against Trans Union LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Envoy Mortgage LP ("Envoy"), and Nationstar Mortgage LLC ("Nationstar") for breach of fiduciary duty, negligence, violation of 12 U.S.C. § 2605, and willful noncompliance with the Federal Credit Reporting Act ("FCRA") after Plaintiffs received notice that they were delinquent on their mortgage payments (Filing No. 86). Nationstar filed the instant Motion in the course of ongoing pre-trial motions. For the following reasons, Nationstar's Motion is **denied.**

### I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

On December 8, 2020, Plaintiffs purchased property located in Georgetown, Indiana (the

"Property") to use as their primary residence (Filing No. 86 at 5). To finance the home, Plaintiffs procured a "federally related mortgage loan," as that term is defined at 12 U.S.C. § 2602(1), secured by a mortgage against the property (the "Loan"). *Id.*

**A.      Transfer of Servicing from Envoy to Nationstar**

Envoy was the servicer of the Loan from its origination (Filing No. 86). Then, on October 1, 2021, the servicing of the Loan was transferred from Envoy to Nationstar (Filing No. 86 at 6). At this point, Envoy reported the Loan as 120 days past due. *Id.* Plaintiffs were not notified by Envoy that the servicing of the Loan had been transferred until December 2021. *Id.* Plaintiffs paid Envoy for the Loan payments due for October 2021 and November 2021 on October 15, 2021, and November 8, 2021, respectively. *Id.* Then, when Plaintiffs paid Envoy for the Loan payment due for December 2021, Envoy returned the check and advised Plaintiffs to make payments to Nationstar, the new servicer for the Loan. *Id.* In December 2021, Envoy also advised the Plaintiffs that the payments made for October 2021 and November 2021 would be credited to their account. *Id.* However, the payments were not credited to Plaintiffs' account until nearly a year later—October 2022 and November 2022—resulting in Nationstar reporting the mortgage account as delinquent to one or more national credit reporting agencies ("CRAs") and assessing late fees each month (Filing No. 86 at 11).

**B.      Continuous Written Requests Sent by the Plaintiffs**

Consequently, throughout 2022, Plaintiffs called and sent written requests to both Envoy and Nationstar, imploring them to apply the mortgage payments to their Loan to correct the negative credit reporting (Filing No. 86. At 7). On or about April 14, 2022, the Plaintiffs submitted a notice of error to Nationstar (Filing No. 106 at 2). On April 21, 2022, Nationstar acknowledged receipt stating, "In accordance with the Real Estate Settlement Procedures Act ('RESPA'), a

response will be provided within 30 business days from receipt of your inquiry." *Id.* On April 28, 2022, Nationstar responded, asserting no error had occurred in the payment history. *Id*. at 3. On or about November 10, 2022, the Plaintiffs submitted a notice of error regarding Nationstar's continued reporting of late payments. *Id.* Nationstar responded on December 5, 2022, again claiming no error. *Id*.

Within the same month, Plaintiff Kathleen Browning applied to the United Services Automobile Association for a real estate loan, only to be denied due to the adverse impact of the late payments reported on her credit report ([Filing No. 86 at 9](#)). Soon after, on December 1, 2022, Nationstar transferred the servicing of Plaintiff's loan to Roundpoint Mortgage Servicing Corporation ("Roundpoint") ([Filing No. 106 at 3](#)). On or about December 5, 2022, Mr. Collins submitted a request for a refund of the late fees paid to Nationstar. *Id.* On December 7, 2022, Nationstar acknowledged the error stating, "We understand this was a prior servicer error." *Id.* However, Nationstar refused to take action to refund the late fees it had collected from the Plaintiffs. *Id*.

**C.**     **Submission of Qualified Written Requests & Nationstar's Response**

Consequently, on February 27, 2023, Plaintiffs sent qualified written requests ("QWRs"), notices of error, and requests for information to Nationstar ([Filing No. 86 at 9](#)). These letters disputed the erroneous reporting of the account to credit reporting agencies and the imposition of late fees and interest charges associated with the servicing errors ([Filing No. 86 at 10](#)). The Plaintiffs requested a refund of the late fees and interest charges, correction of the credit reporting errors, and information about the account, including Automatic Universal Data Forms submitted to the credit reporting agencies ([Filing No. 86 at 10](#)).

3

On or about March 14, 2023, Nationstar wrote a letter in response to the February 27, 2023, QWR ([Filing No. 86 at 10](#)). In the letter, Nationstar acknowledged that Plaintiffs made the Loan payments in a timely manner and that Envoy failed to forward the missing payments, but nevertheless refused to correct how it was reporting the Loan to the credit reporting agencies. *Id.* As of July 11, 2023, Nationstar reported the account as past due from January 2022 through August 2022. *Id.*

**D.   Procedural History**

On February 14, 2024, Plaintiffs filed their Complaint against Trans Union, Experian, Equifax, Envoy, and Nationstar alleging that these entities violated federal laws designed to protect homeowners ([Filing No. 1](#)). An Amended Complaint was filed on March 4, 2025 ([Filing No. 87](#)). The claims against Equifax, Experian, Trans Union, and Envoy have been resolved (*see* [Filing No. 146](#)),([Filing No. 147](#)), ([Filing No. 158](#), ([Filing No. 159](#)).  Nationstar is the sole remaining defendant. On March 12, 2025, Nationstar filed the instant Motion ([Filing No. 90](#)), which is now ripe for ruling.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Nationstar contends that their status as a transferor servicer when the February 27, 2023, QWR was sent relieves them of their duty to acknowledge, respond, investigate, or correct errors. Specifically, Nationstar argues that: (1) Nationstar was not servicing the loan when the alleged error occurred and thus, because Section 2605(e) only applies to servicers and Regulation X fails to impose a duty on transferor servicers, Nationstar had no duty to respond to the Plaintiffs' QWR; and (2) Plaintiffs fail to allege plausible damages (Filing No. 107). The Court evaluates Nationstar's arguments through the lens of these elements: (A) the applicability of Section 2605(e) and 12 C.F.R. § 1024 ("Regulation X"); (B) Nationstar's duty as a servicer under Regulation X; and (C) the damages asserted by Plaintiffs.

5

A.   **The Applicability of Section 2605(e) and Regulation X to Nationstar**

The Amended Complaint alleges that Nationstar failed to acknowledge, respond, investigate, or correct errors pursuant to Plaintiff's QWRs in violation of Section 2605(e) (Filing No. 86 at 11–12). Section 2605(e) limits its application to only a "servicer." *See* 12 U.S.C. § 2605(e). Section 2605(e) states in relevant part:

> **(e) Duty of loan servicer to respond to borrower inquiries**
> **(1)** Notice of receipt of inquiry
> **(A)** In general. If *any servicer* of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period. . . .
> **(2)** Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the *servicer* shall [take certain actions] . . . .
> **(3)** Protection of credit rating. During the 60-day period beginning on the date of the *servicer's* receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a *servicer* may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1618a of Title 15).

12 U.S.C. § 2605(e) (bold emphasis in original; italics emphasis added). Further, a "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). The term "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). However, the statute fails to differentiate between a servicer and

6

transferor servicer. Accordingly, the issue before the Court is at what time is the transferor servicer relieved of the obligations imposed on servicers under the RESPA.

Nationstar argues that the Court recently confirmed the duty to respond to a QWR lies with the entity servicing the loan at the time the QWR was made (Filing No. 91 at 3). Nationstar contends that it is in the same position as Envoy, whom the Court previously dismissed Plaintiffs' Section 2605(e) claims against, and thus, Plaintiffs' Section 2605(e) claims against Nationstar should be likewise dismissed. *Id*.

The Plaintiffs argue that Nationstar had a duty to respond to their QWR based on the plain language of Regulation X (Filing No. 106 at 4). The Court finds that Regulation X imposed a duty on Nationstar to respond to the Plaintiffs' QWR.

The Court previously determined that Envoy's obligation as a servicer under Section 2605(e) was centered around the understanding of *Harrel v. Freedom Mortg. Corp.*, 976 F.3d 434, 441 (4th Cir. 2020) (Filing No. 82 at 16–17). In *Harrel*, the Fourth Circuit decided that the obligations of servicers were determined by the date the transfer takes effect or the date the transferee servicer receives the first mortgage loan payment. 976 F.3d at 441. However, in this case, the Court declined to make a clear distinction pertaining to time frames, instead construing the Fourth Circuit's analysis to mean that the farther from the transfer date the request is made, the less binding a transferor servicer's obligation to respond (Filing No. 82 at 17). The Court relied on the lack of differentiation between a servicer and transferor under Section 2605(e) to acknowledge that a transferor servicer is not immediately relieved of all liability pursuant to the statute. *Id*. The Court left open the possibility of circumstances warranting liability for the transferor servicer under Section 2605(e) even after the transfer. *Id*. Still, the Court found no duty to respond to QWRs under Section 2605(e) as a transferor servicer when the QWR was made more than a year after the

7

transfer date and the requesting party knew of the transfer. *Id*. The Court concluded that because Envoy transferred servicing to Nationstar on October 1, 2021, the QWR sent on February 27, 2023, exceeded the response obligation under Section 2605(e). *Id*.

Comparatively, Nationstar's obligation to respond as a transferor servicer of the Plaintiff's Loan arises under Regulation X, which expands upon the duties of mortgage loan servicers as outlined under Section 2605(e), identifying the type of errors that require a response and the procedures for investigating them. Accordingly, Regulation X creates a duty in reference to Section 2605(e). *See Starke v. Select Portfolio Servicing, Inc.*, No. 17 C 4123, 2017 U.S. Dist. LEXIS 207616, at *13 (N.D. Ill. Dec. 18, 2017) ("[I]n enacting the relevant sections of Regulation X, the Consumer Financial Protection Bureau ('CFPB') tied § 1024.35 to a privately enforceable statute, stating that it implements [12 U.S.C. § 2605]." (citing *Mortgage Service Rules under the RESPA*, 78 Fed. Reg. 10696, 10737 (Feb. 14, 2013)); *see also Weber v. Seterus, Inc.,* No. 16 C 6620, 2018 U.S. Dist. LEXIS 51490, at *22 (N.D. Ill. March 28, 2018) (same); *Blair v. PNC Bank*, No. 1:21-cv-766, 2022 U.S. Dist. LEXIS 134828, at *11 (S.D. Ohio July 28, 2022) (acknowledging that Regulation X builds upon the loan servicer's requirements as outlined in Section 2605(e)). Nationstar transferred servicing to Roundpoint on December 1, 2022, and received the QWR on February 27, 2023. As a transferor servicer, Nationstar retained an obligation to respond to Plaintiff's QWR for up to one year following the transfer of servicing to Roundpoint, as specified in Regulation X. *See* 12 C.F.R. § 1024.35 (a)–(g)(1)(iii)(A). Consequently, the three-month period separating the transfer of service and receipt of QWR by Nationstar support the Court's notion that Nationstar held a duty to respond under Regulation X.

8

C. **Nationstar's Duty as a Servicer**

Plaintiffs cite Regulation X in their Response, arguing that "the duty to respond applies to any notice received within one year of the transfer." (Filing No. 106 at 4). Here, the letter from Plaintiffs' counsel was sent on February 27, 2023—well within one year of the December 1, 2022, transfer date. Accordingly, Plaintiffs argue that Nationstar's duty to investigate and respond under 12 U.S.C. § 2605(e) and § 1024.35 remained in effect (Filing No. 106 at 4). The Court agrees.

Regulation X states in relevant part:

> (a) **Notice of error**. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.
>
> (d) **Acknowledgment of receipt**. Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide the borrower a written response acknowledging receipt of the notice of error.
>
> (e) **Response to notice of error**—(1) Investigation and response requirements—(i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
>> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

> (g) **Requirements not applicable**—(1) In general. A servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section if the servicer reasonably determines that any of the following apply:
>> (iii) Untimely notice of error. A notice of error is delivered to the servicer more than one year after:
>>> (A) Servicing for the mortgage loan that is the subject of the asserted error was transferred from the servicer receiving the notice of error to a transferee servicer.
>
> (i) **Effect on servicer remedies**—(1) Adverse information. After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of a notice of error.

*See* 12 C.F.R. § 1024.35.

Here, Regulation X acknowledges a servicer's duty to respond to QWRs containing a proper notice of error within one year. *See* 12 C.F.R. § 1024.35(g)(1)(iii)(A). Because the regulation relieves transferor servicers of a duty to respond to QWRs sent more than one year after the transfer of servicing of the loan, the Court finds that a reasonable interpretation of this provision would be that the inverse is also true—transferor servicers have a duty to respond to QWRs up to one year after transfer of servicing of the loan. *See id.* Indeed, logic dictates that Regulation X's relieving transferor servicers of a duty after one year requires the presence of a duty to be relieved in the first place. While Nationstar argues that Regulation X is merely a limitation, not a source of duty, (Filing No. 107 at 3), the Court finds this construction unreasonable because a limitation on a non-existent duty is no limitation at all. Accordingly, the Court rejects Nationstar's construction as it would render this provision superfluous and unnecessary. *See McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 587 (7th Cir. 2005) ("it is an elementary canon of construction that a statute should be interpreted so as not to render one part inoperative, superfluous, or meaningless.") (cleaned up). Consequently, transferor servicers that receive a

QWR pertaining to an error occurring during their servicing period are required to respond and comply if the QWR is sent within one year of transfer of servicing.

As the servicer of the mortgage loan from October 2021 to December 2022, Nationstar held a duty to comply with Regulation X § 1024.35(d), (e), and (i) for up to one year following the transfer of servicing. Because the error alleged in the QWR was the result of Nationstar's alleged failure to correct the delinquency status of Plaintiffs during the servicing period and the QWR was sent within one year from the time Nationstar transferred servicing of the loan to Roundpoint, the Court concludes that Nationstar had a duty to comply with Regulation X concerning the Plaintiffs' QWR.

D.      **The Damages Asserted by Plaintiffs**

Finally, Nationstar contends that Plaintiffs' claims nevertheless fail because they cannot adequately plead damages (Filing No. 91 at 4). Specifically, Nationstar argues that any alleged deficiencies in its response could not have caused the Plaintiffs any actual damages related to the loan. *Id*. In Response, the Plaintiffs argue that they incurred damages in the form of negative credit reporting and the denial of credit (Filing No. 106 at 6). The Plaintiffs also argue that these damages are directly traceable to the servicing errors that Nationstar failed to correct and at this stage of the litigation, they are not required to quantify the damages. *Id*. The Court agrees.

In ruling on a motion to dismiss, the court's role is to "test the sufficiency of the complaint, not to decide the merits of the case." *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court cannot determine the exact amount of damages at this stage of the case. However, the Court concludes above that the Plaintiffs have adequately pleaded a violation of the duties outlined in Regulation X, allowing damages to be considered under Section 2605(f). *See* 12 U.S.C. § 2605(f);

11

*Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 694 (7th Cir. 2011). Therefore, Nationstar's contention that Plaintiffs cannot state a claim for damages under Section 2605(f) fails.

Having concluded that Plaintiffs adequately stated a claim for a violation of 12 U.S.C. § 2605(e), the Court **denies** Nationstar's Motion to Dismiss.

### IV.    CONCLUSION

For the reasons explained above, this action has survived the initial hurdle of a motion to dismiss and Nationstar's Motion to Dismiss Plaintiffs' Amended Complaint ([Filing No. 90](Filing No. 90)) is **DENIED**.

**SO ORDERED**.

Date: 12/10/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Brett J. Ashton
KRIEG DEVAULT LLP (Indianapolis)
bashton@kdlegal.com

Kay Dee Baird
KRIEG DEVAULT LLP (Indianapolis)
kbaird@kdlegal.com

Justin M Baxter
Baxter & Baxter, LLP
justin@baxterlaw.com

Kevin Connor
Dykema Gossett PLLC
kconnor@dykema.com

Virginia Bell Flynn
Troutman Pepper Hamilton Sanders LLP
virginia.flynn@troutman.com

Ian N. Fuqua  
Hinshaw & Culbertson LLP  
ifuqua@hinshawlaw.com

Paulina Garga-Chmiel  
Dykema Gossett PLLC  
pgarga@dykema.com

Robert B Groholski  
Dykema Gossett PLLC  
rgroholski@dykema.com

John E. Joseph  
Holland & Knight LLP  
john.joseph@hklaw.com

Andrew M. Lehmann  
Trans Union, LLC  
andrew.lehmann@transunion.com

Steve Lozier  
Troutman Pepper Locke LLP  
stephen.lozier@troutman.com

Christopher R. Murphy  
Holland & Knight LLP  
Chris.Murphy@hklaw.com

Camille Renee Nicodemus  
Quilling Selander Lownds Winslett Moser  
cnicodemus@qslwm.com

Neil Peluchette  
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)  
npeluchette@taftlaw.com

David Sandefer  
Bradley Arant Boult Cummings LLP - Atlantta  
dsandefer@jonesday.com

Heather H Sharp  
Seyfarth Shaw LLP  
hsharp@seyfarth.com

Justin M Sizemore
Holland & Knight LLP
justin.sizemore@hklaw.com

Joshua Stiers
Trans Union, LLC
joshua.stiers@transunion.com

Zachary L. Taylor
Winton & Hiestand Law Group PLLC
zlt@louisvillelawoffice.com

14